Robert D. JENKINS & Betty J. Jenkins, d/b/a Seventy–Seven Investment Co., a partnership, Appellants,

v.

Shirley R. DOAK and June J. Dickson, Respondents,

Mercantile Bank & Trust Co., Intervenor.

No. WD 40783.

Missouri Court of Appeals, Western District.

March 14, 1989.

STATE of Missouri, Respondent,

v.

Antonio D. BRADSHAW, Appellant.

No. WD 40631.

Missouri Court of Appeals, Western District.

March 14, 1989.

Peter J. Koppe, Kansas City, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., SHANGLER and BERREY, JJ.

SHANGLER, Judge.

The defendant Antonio Bradshaw appeals from the judgment of convictions of robbery in the first degree and armed criminal action. The court imposed sentences of 10 years imprisonment on the robbery count and 3 years imprisonment on the criminal action count, as returned by the jury.

The defendant asserts on appeal that (1) the elements of robbery in the first degree offense were not proven, and hence, the offense was not submissible; (2) the prosecution failed to prove that the defendant possessed a culpable mental state; (3) it was error to refuse Instruction A which tendered the offense of attempt to commit robbery in the first degree.

The evidence favorable to the convictions fairly allows these inferences: On April 29, 1987, at about 11 p.m., Danny Welch left work. He drove to a pay telephone at 85th and Tracy and inserted a quarter in order to speak to a friend. A street light stood beside the telephone. A car, occupied by three black males, pulled up and parked parallel to Welch so that the other driver was next to the passenger side of the

Welch vehicle. The other driver beckoned to Welch to roll down his window, ostensibly ask directions. Welch complied, and the driver and a passenger then lifted guns. Welch was directed not to move, to drop the phone, and to give over his wallet. The defendant then got out of the other car, walked over to Welch, and took the wallet. He smirked as he did so. The wallet was taken to the other car, examined, and then the defendant said: "He doesn't have anything, let's get the f ... out of here." The driver threw the wallet back at Welch. One of the passengers ordered Welch to empty his pockets, but there was only small change. Another ordered him to open the console, but there was nothing there. He then was handed some tennis shoes, but they were thrown back into the Welch car. The three black males then left.

Welch then summoned the police from the home of a friend, conducted the police to the scene of the crime, described the occupants of the other car, described the vehicle and related the license plate number. A number of days later, an automobile which bore that plate number was stopped. The defendant was an occupant. He was arrested. A search of the vehicle uncovered a shotgun. That same day, Welch viewed a lineup which contained the defendant and three others. He identified the defendant and the driver from among them as participants in the robbery upon him.

The defendant Bradshaw was the only witness for the defense. On the night of the event, he was with one Derrick Howe and Johnnie, a friend of Derrick's. They were en route to pick someone up when Johnnie, in the back seat, pulled out a sawed-off shotgun. He was not aware of the presence of the shotgun. It was not until they turned the corner to the site of the event, he said, that talk of robbery surfaced. After they pulled up next to the Welch car, Johnnie in the back seat told the defendant to "get his wallet." He complied because Johnnie had a gun and the defendant "didn't know how this dude would react—[s]o I tried to prevent the robbery as much as possible seeing that I

was there." Nevertheless, the defendant got the wallet from Welch, went through the wallet, and then tossed it back to Welch with the comment: "He don't have anything." There were credit cards and some money, but he threw it back nonetheless. It had been the testimony of Welch that, in fact, the wallet contained $10, [but was secreted so that it could not be seen].

The defendant acknowledges his presence at the event which became a robbery. He even acknowledges a robbery, but argues that no commission of the offense was proven against him because, even by the account of the prosecution, he took and asported no property of value from Welch, and therefore was entitled to an acquittal. He argues, moreover, that no inference was possible from the evidence that he could reasonably have anticipated that the other two would commit a robbery, and so was entitled to acquittal for that additional reason. He argues also, finally, that if not an acquittal, then he was entitled to a new trial for failure to submit the offense of attempted robbery first degree, rather than robbery first degree.

■ A person armed with a deadly weapon who forcibly steals property from another commits the crime of robbery in the first degree. § 569.020, RSMo 1986. The proof of that offense entails evidence that the accused took the property of the other by violence or fear and asported the property. *Byrd v. State*, 726 S.W.2d 402, 403[1, 2] (Mo.App.1987). "The 'taking' of the property occurs when the offender wrongfully assumes complete dominion over the property and 'asportation' occurs when the property taken has been moved, however slightly." *State v. Knabe*, 538 S.W.2d 589, 592 (Mo.App.1976). The defendant argues that there was no proof that *complete dominion* was ever exercised over any property of the victim Welch, since none was retained.

■ The defendant was charged with the robbery of a wallet from the person of Welch. His evidence concedes that while weapons were trained on Welch, he took the wallet from him, looked through it, and

returned the property to Welch with the comment: "He don't have anything." That evidence amounts to proof of a "taking" [the wrongful assumption of complete dominion over the property] and of an "asportation" [removal of the property after the taking]. The crime of robbery was consummated when the defendant gained control of the wallet, even for a moment. *State v. Charles,* 537 S.W.2d 855, 857[5, 6] (Mo.App.1976). That the defendant restored the wallet to Welch when no money was found could not retract or efface the crime already completed. The defendant means to argue, not that the evidence taken favorably to the verdicts was not sufficient to prove that Welch was put in fear by the display of armaments or that a taking and asportation were not accomplished. He means to argue, rather, that the criminal enterprise was a matter of unexpected caprice of the other two, and he cannot be assigned their mental state merely because he happened to be in their company. He means to argue also that he acted from fear of what Johnnie, who wielded the shotgun, would do if he failed to assist in the robbery. He argues the absence of mental culpability by the fact that he returned the wallet to Welch even though he saw it contained money.

That argument, of course, neglects the best intendments of the evidence in favor of the verdicts. The jury was not obliged to believe that the defendant detected money in the wallet, but restored it to Welch nevertheless. The jury evidently believed the testimony of the victim Welch that the wallet contained a $10 bill, but secreted so that the defendant did not detect it. The jury could have also believed that the intention of the other two to rob was announced sufficiently in advance of the event to enable the defendant to object and abandon the proposed criminal enterprise before it was perfected by the other two. The jury was warranted to believe that the defendant neither objected to a robbery nor removed himself from that purpose, but participated actively with the others in the crime against Welch. It was before the jury, also, that when he was taken in arrest he was in the company of one of the robbers, and when he was interrogated by the police thereafter, he denied presence at the robbery site or any knowledge of the event.

The culpable mental state for conviction of robbery in the first degree is rendered in offense § 569.020, RSMo 1986 and definition § 569.010, RSMo 1986. The offense section provides that a person "commits first degree robbery when he forcibly steals property and in the course thereof he or a participant ... is armed with a deadly weapon or threatens the use of a deadly weapon." The definition section provides that *forcibly steals* means "the use or threatened use of physical force for the purpose of, etc." The instruction which submitted the offense of robbery in the first degree required a finding of the purposeful conduct those statutes impose, and hence the mental state required for conviction of the offense. *State v. Brewer,* 672 S.W.2d 384, 387[4, 5] (Mo.App.1984). The evidence supports the submission and the convictions.

We reject also the contention that the failure to submit to the jury the instruction on attempted robbery for submission to the jury constituted error. There was substantial evidence that the crime for which the defendant was charged was actually perpetrated and completed. The defendant could not have been lawfully convicted of the attempted offense. § 556.160, RSMo 1976; *State v. Charles,* 537 S.W.2d at 857[5, 6].

The convictions are affirmed.

All concur.