**STATE of Missouri, Plaintiff/Respondent,**

v.

**Brian COSBY, Defendant/Appellant.**

**Brian COSBY, Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

Nos. 69759, 72558.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 2, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1998.

Application for Transfer Denied
Oct. 20, 1998.

Deborah B. Wafer, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES R. DOWD, Judge.

On August 5, 1994, Brian Cosby was indicted by a St. Louis City grand jury on one count of first degree murder in violation of section 565.020.1 RSMo 1994, two counts of first degree robbery in violation of section 569.020 RSMo 1994, and three counts of armed criminal action in violation of section 571.015 RSMo 1994. On September 26, 1995, Cosby was convicted by a jury of second degree murder, first degree robbery, attempted first degree robbery, and three counts of armed criminal action. Cosby was sentenced by the trial court to a total prison term of life plus twenty years. Cosby then filed a *pro se* motion for post-conviction relief. This motion, as amended, alleged that

Cosby's trial counsel was ineffective and that Rule 29.15 is unconstitutional. This motion was denied without an evidentiary hearing.

In his appeal, Cosby alleges that: (1) the trial court erred in overruling his motion for judgment of acquittal on the robbery count and on the accompanying armed criminal action count, (2) the trial court erred in overruling defense objections to the admission of evidence, (3) the trial court erred in permitting the state to question a defense witness about her testimony as an alibi witness in another murder trial, and (4) the motion court erred in denying his post-conviction motion. We affirm.

In the light most favorable to the verdict, the facts are as follows. As Roger Wiseman was walking home at noon on June 2, 1994, Cosby tapped him on the shoulder and said, "Where's my money?" After Wiseman turned and found Cosby pointing a small silver handgun in his face, Cosby repeated his demand for money. Wiseman noticed that his assailant was wearing a heavy blue coat.

At this point, Brian Jones approached Wiseman, pushed him against a wall, and, with Cosby, began searching his pockets. Wiseman had only keys and business cards in his possession at the time. One or both of the assailants discovered these items, removed them from the victim, and threw them to the ground. Further searching by the assailants confirmed that Wiseman had no money. At this point, Cosby picked up the keys and cards, gave them back to Wiseman, and ordered him to run down the alley.

Later that day, Cosby and Jones saw Wilbert Mehlberg walking down the street. Believing that he was going to cash a check, the two planned on robbing him on his return trip. Thirty minutes later, they observed him returning. Cosby then asked Fred Edwards for the same silver automatic that Cosby and Jones had used in the attempt against Wiseman. The two then attempted to rob Mehlberg. When Mehlberg did not respond to their demands, Cosby pushed him and shot him twice in the back and once in the leg. The two assailants took no money from Mehlberg and ran off. Mehlberg later died of one of the gunshot wounds to the back.

During the police investigation, Wiseman participated in three lineups. In the first lineup, the police brought him to an address and told him to pick out the person on the porch who looked most like his assailant. Wiseman pointed out the person whom he believed most resembled his assailant. Neither Cosby nor Jones were on the porch at the time. In two separate, subsequent lineups, Wiseman identified Jones and Cosby. Wiseman also identified the blue coat that his assailant wore during the incident.

## I. Overruling of Motion for Judgment of Acquittal

■ Cosby contends that the robbery conviction and the accompanying armed criminal action conviction are erroneous because no robbery occurred. According to Cosby, he and Jones attempted to rob Wiseman but found only keys and business cards. Because Cosby did not plan to take these items, he never removed them from Wiseman with the intention of retaining them. He merely moved them out of the way so that he could continue his search through Wiseman's pockets. Cosby's intent not to steal the cards and keys is further shown by his return of the property to Wiseman at the conclusion of the incident. Because he never had the intention to take the cards and keys, he lacked the intent to forcibly steal those items. Consequently, Cosby argues that he could not have committed robbery. We disagree.

Cosby and the state both rely on *State v. Bradshaw*, 766 S.W.2d 470 (Mo.App. W.D. 1989). In that case, a robber took a wallet from the victim, looked through it, informed his accomplices that the wallet contained no money, and returned the wallet to the victim. *Id.* at 472. The court of appeals held in that case that the robbery was complete when the robber gained control of the wallet, even for a moment. The fact that the robber returned the wallet when no money was found did not retract the crime already completed. *Id.* at 473. Cosby attempts to distinguish *Bradshaw* from the instant case by arguing that the robber in *Bradshaw* intended to take the wallet from the victim and actually

did so. In the present case, however, Cosby contends that he never had any intention to take the cards and keys from Wiseman.

The present case cannot be meaningfully distinguished from *Bradshaw*. Whatever Cosby's motives were for removing the cards and keys from Wiseman, he used the threat of force to steal property from his victim. Even if he only removed these items from Wiseman in order to further search his victim, he still removed the items from the victim with the intention of gaining control of them in disregard of Wiseman's right of possession. This activity constitutes robbery within the meaning of section 569.020.1 RSMo 1994. Point I denied.

## II. Evidence of Prior Bad Acts

■ Cosby also contends that the trial court erred in overruling defense objections and allowing the state to adduce evidence and argue that Fred Edwards had loaned his handgun to Cosby on previous occasions. Cosby contends that this evidence and argument impermissibly involved prior uncharged crimes and bad acts. As a result, Cosby argues that he was denied due process and a fair trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and by Article 1, Section 10, of the Missouri Constitution. We disagree.

As a preliminary matter, Cosby does not distinguish what, if any, uncharged crime this evidence and argument alludes to. The only testimony allowed on this matter concerned occasions in which Edwards loaned his handgun to Cosby for protection purposes. It is not clear what crime Cosby violated by borrowing the weapon. Assuming, however, that this does constitute evidence of prior uncharged crimes or bad acts, Cosby's argument still falls short due to failure to preserve the alleged error and the lack of plain error.

The testimony that Edwards had previously loaned the handgun to Cosby was first presented during the redirect examination of Edwards. At that time, the defense objected on the grounds that the state's question alluded to prior uncharged crimes. The court overruled the objection and allowed the state to elicit testimony that Cosby had previously borrowed the handgun for protection purposes.

The second instance occurred during the direct examination of Jones, at which time the defense failed to object. The third instance occurred during the state's cross-examination of Cosby, at which point the defense objected, but the objection was overruled. Finally, during closing argument, the prosecution reiterated that Edwards had previously loaned the handgun to Cosby. Based on his motion *in limine* to exclude evidence of uncharged crimes and sporadic objections at trial, Cosby argues that the trial court fully and carefully considered the matter when it was first presented during Fred Williams's testimony and that the matter is preserved for appeal. We disagree.

■ Despite the pretrial motion, to preserve the issue for appeal, Cosby's counsel needed to object to the testimony at trial. A motion *in limine*, in and of itself, preserves nothing for appeal. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). Failure to object at the earliest opportunity to the admission of evidence or argument of counsel constitutes a waiver of the claim. *State v. Borden*, 605 S.W.2d 88, 90 (Mo. banc 1980).

In the instant case, testimony was first presented during the redirect examination of Edwards:

PROSECUTOR: Had you ever given the gun to Brian Cosby before?

EDWARDS: Brian Cosby?

PROSECUTOR: Yes.

EDWARDS: Yes, sir.

PROSECUTOR: How many times?

DEFENSE COUNSEL: Objection, your Honor. May we approach.

The prosecutor clarified the question and asked a follow up question before the defense counsel objected. Defense counsel did not object at all to the prosecutor's closing argument. Because defense counsel failed to object to either the testimony or the argument of opposing counsel at the earliest opportunity, the issue is not preserved for appeal.

■ We nevertheless review for plain error affecting substantial rights resulting in manifest injustice or miscarriage of justice. Rule 29.12. As a general rule, evidence of prior uncharged crimes and prior bad acts are inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). However, evidence of prior bad acts is admissible if it is both legally and logically relevant. *State v. Roberts,* 948 S.W.2d 577, 591 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). If the increased probative value of the evidence is sufficient to outweigh the danger of unfair prejudice, then the evidence is admissible. *State v. Sladek,* 835 S.W.2d 308, 315 (Mo. banc 1992). In the present case, the evidence is logically and legally relevant because it shows Cosby's access to the handgun used to commit the crimes. In particular, ready access to the weapon was necessary for Cosby to acquire the weapon in the time period between the two sightings of Mehlberg. The probative value of this testimony far outweighs any possible prejudice that may have occurred due to the fact finder's knowledge that Cosby had previously borrowed the handgun for protection purposes. Point II denied.

### III. Denial of Motion for Post–Conviction Relief

Cosby also contends that the motion court erred in overruling his post-conviction relief motion. This motion, as amended, alleged that Cosby's counsel failed to object to Wiseman's out-of-court and in-court identifications of Cosby. Cosby argues that the lineups were suggestive because he was the only clean-shaven person in the lineup, there were only three people in the lineup, and the police officer told Wiseman before the lineup that they thought they had caught the right person. According to Cosby, had defense counsel objected to the identification evidence continuously, the outcome of the trial may have been different. This failure to object allegedly violated Cosby's right to due process of law and effective assistance of counsel as guaranteed by the Fourteenth and Sixth Amendments of the United States Constitution and Article 1, Sections 10 and 18(a) of the Missouri Constitution. We hold that Cosby's rights to due process and effective assistance of counsel have not been violated.

Appellate review of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(k); *Leisure v. State,* 828 S.W.2d 872, 873–74 (Mo. banc), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). Such a finding will be made if the review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Leisure,* 828 S.W.2d at 874.

When a convicted defendant complains that his defense counsel was ineffective, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To do so, the defendant must overcome the presumption that the conduct in question might be considered sound trial strategy. *Id.* at 689.

■ In this case, Cosby has failed to show that the actions of defense counsel fell below the level of reasonableness. Cosby's argument certainly does not overcome a presumption that his defense counsel acted with a sound trial strategy in mind. First, Cosby agreed in his motion for a new trial that his counsel made a strategic decision not to object. Second, Cosby's defense counsel cross-examined the appropriate police officer and questioned him about the facial hair discrepancy, about the fact that there were only three people in the lineup, and about the police officer's comment to the witness that they thought they had the right person. Cosby's trial counsel demonstrated the strategy of attempting to discredit the lineup procedures in front of the jury.

■ Furthermore, a lineup is not impermissibly suggestive simply because the individuals in the lineup have different physical characteristics. A reasonable effort to find physically similar participants is all that is required. Differences in weight, age, height, hairstyle and other physical characteristics do not necessitate a finding of impermissible suggestiveness. *State v. Williamson,* 836

S.W.2d 490 (Mo.App. E.D.1992). A lineup of three participants has been found unobjectionable. *State v. Green*, 635 S.W.2d 42, 45 (Mo.App. W.D.1982). Here, Detective Ralph Campbell testified that the other two participants in the lineup were the only ones that the police could find with the same complexion and general build as Cosby.

Regarding the statement by the police to Wiseman, any reasonable person in Wiseman's position would assume that the police had a suspect in the lineup and that they were not wasting his time. It is only natural that a victim of a crime asked to view a lineup would believe that it contains a suspect. *State v. Bivens*, 558 S.W.2d 296 (Mo.App.1977). The police officer's statement confirming the witness's belief that a suspect was in the lineup simply could not have prejudiced Cosby. Point III denied.

### IV. Testimony of Sheerece Beasley

Cosby's final point of error is that the trial court erred in permitting the prosecution to question defense witness Sheerece Beasley *regarding the issue of whether she had been endorsed as a defense witness in a previous murder trial.* This question allegedly prejudiced the defense by improperly attacking Beasley's character. We hold that the trial court did not abuse its discretion.

During the trial, Beasley testified that on the day of the murder she had been with Cosby from ten or eleven o'clock in the morning until four o'clock in the afternoon. On cross-examination, the prosecution asked Beasley about her involvement in an earlier trial. Defense counsel objected that such information was irrelevant to the case at hand. Out of the hearing of the jury, the prosecutor argued that her endorsement as a defense witness in the earlier case showed her inclination to act as an alibi witness. The trial court overruled the objection and the prosecution elicited from Beasley that she had been subpoenaed *as an alibi witness* in the earlier trial. The defense included this issue in the motion for a new trial, thereby preserving it for appeal.

A trial court is vested with broad discretion in controlling the scope of cross-examination. *State v. Leisure*, 749 S.W.2d 366, 378 (Mo. banc 1988). Under Missouri law, the interest or bias of a witness are never irrelevant matters. *State v. Montgomery*, 901 S.W.2d 255 (Mo.App. E.D.1995).

In the present case, the prosecution questioned Beasley's endorsement as an alibi witness in an earlier trial, not to impugn her character, but to support the inference that she had a proclivity to testify as an alibi witness. The direct and cross-examination made it clear that the previous trial did not concern a crime with which Cosby was involved. This inference in turn supports a second inference that the witness carries a bias against the state that may affect her credibility as a witness.

Furthermore, we fail to see how this testimony, even if erroneously admitted, prejudiced the defense. The prosecution's case included Jones's testimony that he witnessed the crimes for which Cosby was convicted. It also included the testimony of Wiseman, the victim of the robbery, who identified the defendant, the handgun, and the coat the defendant was wearing at the time of the incident. Among other things, the prosecution's case also included Cosby's access to the handgun used both in the robbery and in the shooting. Preventing the prosecution from eliciting testimony that Beasley had been endorsed as an alibi witness in a previous trial would not have affected the outcome of the verdict. The trial court did not abuse its discretion. Point IV denied.

The judgment is affirmed.

CRANE, P.J., and RHODES RUSSELL, J., concur.