**STATE of Missouri, Respondent,**

**v.**

**Jerald B. HAYES and C. L. Pittman, Appellants.**

**No. 53522.**

Supreme Court of Missouri, Division No. 1.

June 9, 1969.

---

3. The many options open to the juvenile court were set forth in Sec. 211.390, RSMo 1949.

Ted M. Henson, Jr., Poplar Bluff, for appellants.

STORCKMAN, Judge.

The defendants, Jerald B. Hayes and C. L. Pittman, were jointly charged and tried. A jury found them guilty of robbery in the first degree and fixed their punishments at five years in the custody of the Department of Corrections. They were represented at the trial by two able lawyers appointed by the court. . They are also represented on appeal by court-appointed counsel. The sufficiency of the evidence to support the verdict is not questioned and a short statement of the facts will suffice for an understanding of the one issue presented.

There is substantial evidence that the defendants, Hayes and Pittman, and one Billy Charles Nix committed a robbery in the office of the Northwold Motel in Poplar Bluff on May 24, 1967, between 11:30 and 12:00 p. m. They took $229.53 from the cash register, $7 from Lawrence Vincent, the night clerk, and $10 or $12 from Jerome Bradley. Hayes remained in an automobile outside the motel; Pittman and Nix entered the office, made the night clerk lie face down on the floor behind the desk, bound his hands behind him, and took his money as well as that in the cash register. While this was going on, Mr. Bradley who lived close by drove up and found that the space where he customarily parked his car at night was occupied by the automobile in which Hayes was sitting. Becoming suspicious, Mr. Bradley accompanied by his son Earl, a high school sophomore, went to the motel office to investigate. They were forced by the robbers to go inside. Nix had a revolver in his hand but held it pointed down at his side; he made threats of physical harm addressed particularly to Mr. Bradley. Mr. Bradley and his son were also required to lie on the floor behind the desk. They too were bound and Mr. Bradley's money was taken from him.

The victims were able to release themselves shortly after the robbers departed.

Norman H. Anderson, Atty. Gen., Jefferson City, Michael P. Riley, Special Asst. Atty. Gen., Jefferson City, for respondent.

The police were notified and Hayes, Pittman and Nix were arrested in Sikeston by a highway patrolman about an hour later. At the trial the three victims identified Pittman as the robber who was in the office with Nix. Mr. Bradley and his son identified Hayes as the person in the automobile parked outside.

Neither of the defendants took the stand. In support of their defense of alibi, two employees of a restaurant across the street, and a little north of the motel office, testified that the defendants were in the restaurant eating sandwiches and drinking coffee between 11:30 and 11:50 p. m. the night of the robbery.

In his direct examination, Earl Bradley testified he and his father did not go into the office of their own accord, but "they made us go in." He was then asked who made them go inside and he answered, "It was the dead man." Defendants' counsel, out of the hearing of the jury, stated that this remark was highly prejudicial and inflammatory, that it added something to the case that did not belong there, and that they felt that their clients could not have a fair and impartial trial before this jury and urged the court to declare a mistrial and discharge the jury. This occurred at or near the noon hour and the court excused the jury until 1:00 p. m. for the noon recess.

Discussion of the objection was continued in chambers. Uncertainty developed as to the scope of the defendants' objection and the court asked counsel the exact nature of their objection. Defendants' counsel then restated their objection saying that they asked for a mistrial and objected to the answer and requested that it be stricken. When the session was resumed 45 minutes later, the court sustained the defendants' objection, ordered the answer stricken, and instructed the jury to disregard it. The motion for mistrial was denied.

■ The state contends that the defendants have preserved nothing for review be-cause the motion for new trial did not set forth the alleged error in detail and with particularity as required by S.Ct. Rule 27.-20(a), V.A.M.R. The contention is not well taken. The motion for new trial alleges that the court erred in admitting "illegal testimony" and refusing to sustain the defendants' motion for a mistrial and for a discharge of the jury. The answer objected to was stricken. The denial of the motion for a mistrial remains for review. The identification and specification are sufficient in the circumstances of this record. There was only one motion for a mistrial. The statement of the ground is not as specific as it should be but there is no doubt as to the ruling intended for review. The event is further described in written argument and by page references to the transcript. We will dispose of the issue on its merits.

The defendants concede they have not been able to find a case in point on the questions presented. They cite these three cases where this court held that the admission of certain exhibits constituted reversible error: State v. Himmelmann, Mo., 399 S.W.2d 58, 62[4], State v. Floyd, Mo., 360 S.W.2d 630, 633[4], and State v. Smith, 357 Mo. 467, 209 S.W.2d 138, 141[7]. The defendants admit these cases do not present the same factual situations. Neither do they have any persuasive value. The defendants also cite State v. English, 67 Mo. 136, wherein a witness for the prosecution was asked where a man jointly indicted with the defendant was, and over objection the witness was permitted to answer that he was in the Texas penitentiary. This is wholly unlike the situation in this case.

The transcript does not disclose how Nix came to his death so we are as much in the dark as the jury was. We do know, as the jury would, that Nix was not killed in connection with the commission of this robbery or prior to his arrest because a highway patrolman testified that he arrested the defendants and Nix in Sikeston later

that night. A reading of the transcript discloses that this was a wholly spontaneous statement by the witness in an effort to describe or identify a person whose name he did not know or could not at the moment recall.

All witnesses were excluded from the courtroom until they were called to testify, and Earl Bradley was the last of the three eyewitnesses called to the stand. Counsel on both sides were lax about identifying the robbers by name. They generally referred to the kind and color of clothes or physical characteristics. Mr. Nix had been referred to as the only one that displayed a gun. Finally the court intervened to encourage the parties to identify the robbers by name. Before getting the name of Hayes, he was referred to as "The second one over there" and "the one in the dark pants." Earl testified the "other defendant sitting right there in light trousers" was in the office that night. At the court's suggestion, counsel established that the one thus referred to was the defendant Pittman. Following these two identifications, the incident complained of occurred. The state did not solicit the response and obviously did not want it any more than the defense did.

■ The defendants assert that the trial court erred in not sustaining their objection and striking *immediately* the answer of Earl Bradley referring to Nix as the "dead man" and in failing to instruct the jury immediately to disregard the answer and in refusing to declare a mistrial because the testimony was wholly irrelevant and could serve only to inflame and mislead the jury to the defendants' prejudice. The ruling originally sought was limited to a mistrial. This was the only request before the court when the noon recess was taken. Furthermore, Earl Bradley's answer was not a flagrant or manifest impropriety such as provokes a clear-cut objection and a favorable ruling immediately. The scope of the objection was extended at

the conference in chambers and the jury was told of the ruling as soon as the court was reconvened. The court was entitled to explore and consider the matter fully. The defendants were not prejudiced by the delay in advising and instructing the jury occasioned by the noon recess.

■ The remaining question is whether the trial court erred in failing to grant a mistrial. The transcript records that a mistrial was declared in a hearing attempted several months previously. The reason is not shown and it is not important. The trial court is vested with a broad discretion in determining whether a mistrial should be declared because of testimony alleged to be prejudicial, and the supreme court reverses for error in such instances only where it finds there is an abuse of discretion. State v. Crawford, Mo., 416 S.W.2d 178, 187[8].

■ The transcript discloses that the subject was not mentioned again after the answer was stricken and the jury instructed to disregard it. The state did not undertake to exploit the remark in any manner and there is no charge that they induced it. Furthermore, we are not convinced that the witness's response was prejudicial. The unexplained absence of Nix from the trial would have also caused some wonderment. His death, if it did occur, may have resulted from causes entirely unassociated with criminal activity. No abuse of discretion has been shown. We hold that the trial court did not err in refusing to declare a mistrial. State v. Craig, Mo., 433 S.W.2d 811, 813[2–5]; State v. Burnett, Mo., 429 S.W.2d 239, 246[10, 11]; State v. Nolan, Mo., 423 S.W. 2d 815, 818[11–14]; State v. Crawford, Mo., 416 S.W.2d 178, 187[8, 9].

We have examined all of the contentions of the defendants and find them to be without merit. Accordingly the judgment is affirmed.

All of the Judges concur.