STATE of Missouri,
Plaintiff–Respondent,

v.

Carlos DELGADO,
Defendant–Appellant.

No. 15839.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 1989.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Mark E. Maddux, Springfield, for defendant-appellant.

GREENE, Judge.

Carlos Delgado was jury-convicted of second degree assault, a class C felony, § 565.060 RSMo 1986, for which crime he received a 90–day jail sentence and a $1 fine. The assault charge was filed after Delgado, following an argument with Jeffrey Gamble, struck Gamble in the head with a metal jack handle.

Delgado appeals his conviction, alleging the trial court erred in (1) refusing to declare a mistrial after the arresting officer testified that when he went to Delgado's apartment and tried to talk to him about the incident, Delgado refused to discuss it, and (2) in refusing his instructions on the doctrine of self-defense.

Our examination of the record convinces us that the trial court did not err in either of the respects Delgado complains about, and we, therefore, affirm the trial court's judgment.

Viewed in the light most favorable to support the jury verdict, the evidence in the case was as follows. On the evening of October 29, 1987, three young ladies, Amy Haynes, Wendy Brishke, and Connie Meeker were patrons of a Springfield, Missouri night club called "Rumors." After the bar closed, the three girls and Jeffrey Gamble, a friend of Amy's, were standing in front of the night club discussing where they were going to go. They were approached by Carlos Delgado. Delgado, who was drunk, approached Wendy from behind, grabbed her and started to fondle her breasts. Delgado was "babbling and saying a lot of cuss words...." Wendy jerked loose from Delgado, and said, " 'Get away from me. Who are you?' " At that time, Gamble told Delgado, " 'We don't know you. Why don't you go back to wherever you were, you know? Leave us along [sic]. We're talking. These girls don't want anything to do with you so just leave, you know.' "

Gamble and the girls walked to their cars which were parked in the Rumors parking lot. Delgado, still standing in front of the nightclub, continued cursing and yelling obscenities at the group. While standing beside one of their cars in the parking lot, an automobile that had picked up Delgado in front of the building approached Gamble's group and stopped. Delgado jumped out of the car carrying a metal bar that was identified as a jack handle. He was staggering and cursing Gamble. Gamble told him that he didn't want any trouble, and for Delgado to just get back in the car and go home. Delgado continued to advance toward Gamble, cursing and swinging the jack handle. He swung the metal bar at Gamble's head. Gamble put up his arms to ward off the blow, and was struck on his arm near the elbow. The metal bar glanced off Gamble's arm and struck him in the side of the head, inflicting a wound that bled profusely and required six stitches to close. Gamble then grappled with Delgado, and the two men fell to the ground as the weapon was dislodged from Delgado's hand. After a brief scuffle, Delgado left the scene. The police were called, and Gamble was taken to the hospital where his wound was cared for.

Officer Mike Owen of the Springfield Police Department was assigned to investigate the incident. He went to the scene, located and recovered the weapon, took statements from witnesses and then went to Delgado's apartment about 2:40 a.m. on October 30th to talk to him about the matter. Delgado was home, in what Owen believed to be a drunken condition.

At trial, Owen was asked if Delgado was willing to give him a statement about the incident, and Owen answered, "No." Neither the question or answer was objected to. Later, after a series of questions concerning Delgado's intoxicated state, Owen was asked, "And again, was he willing to talk to you?" This question was not objected to. Owen answered, "No." Following the answer Delgado's trial counsel moved for a mistrial on the grounds that the question was an improper reference to Delgado's refusal to answer questions, since Delgado had a constitutional right to remain silent. The trial court denied the request for a mistrial, and, in spite of the fact that Delgado's lawyer had not actually objected to the offending question, stated:

THE COURT: I'm going to overrule your motion for mistrial but I will instruct the jury to disregard the last question and any answer. Was there an answer to it?

MR. RUSH: No, there was not.

MR. VAN ARKEL: Yes. He did say that he hadn't.

THE COURT: All right.

[The following proceedings were had in open court:]

THE COURT: The Court is sustaining the objection and will direct the jury to disregard the question and any answer given.

Delgado testified in his own defense, in which testimony he (1) admitted being drunk during the incident, (2) admitted that he was angry and upset with Gamble, and (3) alleged he advanced toward Gamble with the tire tool in self-defense, but denied hitting him with it. Based on the evidence

related here, the jury returned the verdict in question, and this appeal followed.

■ It has long been the law of Missouri that it is error for the State to introduce evidence that a person being subjected to custodial interrogation, who is later charged with committing the crime being investigated, remained silent or claimed his privilege to remain silent when questioned about the crime. *State v. Starks*, 459 S.W.2d 249, 251–52 (Mo.1970), citing *Miranda v. State of Arizona*, 384 U.S. 436, 468 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966). We do not reach the question of whether or not Delgado was being subjected to custodial investigation, although all evidence points in that direction, since all information Officer Owen had received from on-the-scene witnesses indicates that the focus of the investigation as to who had committed the assault on Gamble was on Delgado alone.

■ When Owen was first asked whether Delgado was willing to talk to him when he went to his apartment, no objection was made to the question asked nor the answer given. Under such circumstances, it has been held that any claim of error is waived. *State v. O'Dell*, 649 S.W.2d 504, 507 (Mo.App.1983). As to the second instance, the question was asked and the answer given before Delgado's lawyer protested. In such cases, where an objection is made after the testimony has already been given, the objection comes too late. *State v. Brown*, 604 S.W.2d 10, 14–15 (Mo.App.1980). Delgado contends that the State's purposeful elicitation of testimony at trial concerning his silence during questioning by Officer Owen was prejudicial plain error, which was not waived by his lawyer's failure to object to the first exchange between the prosecutor and Officer Owen concerning Delgado's silence, citing *State v. Mabie*, 770 S.W.2d 331 (Mo.App. 1989. *Mabie* is distinguishable on its facts. Unlike *Mabie*, in this case there was a protest by Delgado's attorney when the issue was raised the second time, which protest was manifested by a motion for mistrial, which the trial court denied. The trial court did order the jury to disregard the question and answer.

■ A declaration of mistrial is a drastic remedy, which is to be exercised only in extraordinary circumstances. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985), cert. den. 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). A trial court is in a much better position than we to evaluate the prejudicial effect of matters of this kind, and has considerable discretion in deciding whether to grant a mistrial because of some breach of normal trial procedure. Where, as here, the trial court withdraws the offending evidence and instructs the jury to disregard it, we cannot say it abused its discretion by failing to grant a mistrial. *State v. Laws*, 668 S.W.2d 234, 238 (Mo.App.1984). This is especially true when, as here, the evidence of the defendant's guilt is overwhelming. *State v. Grubb*, 705 S.W.2d 83, 84 (Mo.App.1985). The trial court's refusal to grant a mistrial was not an abuse of discretion.

In his remaining point of claimed error, Delgado's counsel asserts that the trial court erred in refusing to give his proffered instructions which were marked "A", "B", and "C". The first of these instructions stated that one of the issues of the case was whether Delgado acted in self-defense when he used force in his assault on Gamble, and spelled out the law on the self-defense issue. The second stated the State had the burden of proving Delgado did not act in self-defense, and that if the jury found that Delgado was not the initial aggressor in the encounter with Gamble, and if he reasonably believed that he was in imminent danger of harm from the acts of Gamble, and that Delgado used only such force as reasonably appeared to be necessary to defend himself, then they must find Delgado acted in self-defense and was not guilty. The last instruction parroted the second, only it referred to "non-deadly force" used by Delgado instead of the word "force" used in instruction "B".

■ The problem with this argument is that, even looked at in the light most favorable to Delgado, there is no substantial

evidence in the record that supports the giving of any type of self-defense instruction. The elements of self-defense require a showing that the accused (1) did not provoke the attack nor was he the aggressor, (2) reasonably believed that he was faced with the necessity of defending himself from bodily harm, (3) used no more force than was necessary, and (4) attempted to avoid the confrontation. *State v. Spencer,* 725 S.W.2d 54, 56 (Mo.App.1987). None of those elements are present here.

 The uncontroverted evidence was that Delgado was the aggressor, and rather than attempting to avoid a confrontation, he created one. Gamble and his female companions had left the scene of the earlier confrontation when Delgado appeared in the parking lot armed with a tire iron and advanced on Gamble. Since Delgado's proffered instructions lacked evidentiary support, the trial court did not abuse its discretion by refusing to give them.

Judgment affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.