**STATE of Missouri, Respondent,**

v.

**Michael McKIBBEN, Appellant.**

**No. WD 55669.**

Missouri Court of Appeals, Western District.

June 8, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied Sept. 21, 1999.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., ULRICH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

Michael McKibben appeals from his convictions of robbery in the first degree,

§ 569.020, RSMo 1994,[1] and armed criminal action, § 571.015. He was convicted by a jury and the trial court sentenced him to life imprisonment for committing first-degree robbery and twenty years imprisonment for armed criminal action. The sentences are to run concurrently. Mr. McKibben alleges that the trial court abused its discretion in (1) admitting testimony of uncharged misconduct occurring after the charged crimes, and (2) admitting into evidence a time card which eliminated his brother as a possible perpetrator of the crimes. The State argues (1) that the testimony of the uncharged conduct was necessary to provide a complete and coherent picture of the crimes charged, and (2) that Mr. McKibben waived his objection to the admission of the time card by stipulating to its foundation and by not raising the foundational argument at trial. The judgment of conviction is affirmed.

## Factual and Procedural Background

On April 4, 1997, Mathew Kia was driving a taxi for Northtown Checkered Cab Company. At approximately 2:00 p.m., Mr. Kia was dispatched to pick up a passenger from a grocery store. When Mr. Kia arrived at the grocery store, a man Mr. Kia identified as Mr. McKibben entered the cab. Mr. Kia recognized Mr. McKibben because he had driven him on two occasions that week, and he was wearing no disguise or camouflage. On both previous occasions, Mr. Kia drove Mr. McKibben to 6006 North Jefferson. When Mr. McKibben entered the cab on April 4, Mr. Kia asked him if he would like to go to 6006 North Jefferson, to which Mr. McKibben responded, "No." Instead, Mr. McKibben asked Mr. Kia to drive according to his directions. While they were driving, Mr. McKibben and Mr. Kia had a brief conversation. Mr. Kia asked Mr. McKibben where he worked and Mr.

McKibben responded that he worked at the Olive Garden Restaurant.

As the ride progressed, Mr. McKibben directed Mr. Kia to an apartment complex on Waukomis Road and asked that he pull over behind a white Camaro. When Mr. Kia pulled over and asked Mr. McKibben for the fare, Mr. McKibben grabbed Mr. Kia's shirt, pointed a knife at him and demanded Mr. Kia's money and wallet. Mr. McKibben then stabbed the driver's seat, but Mr. Kia told him he had no money. After further intimidation by Mr. McKibben, Mr. Kia took a twenty-dollar bill and a few one-dollar bills from his shirt pocket and gave the money to Mr. McKibben. Mr. McKibben then demanded that Mr. Kia drive further, holding the knife to his neck. At some point during the ride, Mr. Kia told Mr. McKibben that he did not earn much money and Mr. McKibben returned the twenty dollars to Mr. Kia.

The cab proceeded south toward Jackson County. As the cab entered the downtown Kansas City area, Mr. McKibben ordered Mr. Kia to drive the car into an alley in the vicinity of Brooklyn and 43rd Street. Mr. Kia refused to drive into the alley and tried to take the knife from Mr. McKibben. The two struggled for the knife, but Mr. Kia yielded when Mr. McKibben bit his ear. Mr. Kia then gave Mr. McKibben the twenty dollars again in an attempt to placate him. Following the struggle, Mr. Kia complied with Mr. McKibben's demand and pulled into the alley. Once in the alley, Mr. McKibben demanded that Mr. Kia get out of the cab and into the trunk. Mr. Kia got out of the cab, but he refused to get into the trunk. In response to Mr. Kia's refusal, Mr. McKibben started "wrestling" Mr. Kia and stabbing him with the knife. Mr. McKibben inflicted approximately ten superficial stab wounds upon Mr. Kia.

Mr. McKibben then put Mr. Kia in the passenger's side of the cab and drove the

---

1. All statutory citations are to the Revised Statutes of Missouri 1994, unless otherwise indicated.

cab out of the alley. While Mr. McKibben was driving, Mr. Kia attempted to jump from the car as it slowed to make a turn. Mr. Kia was successful, but lost his shirt and an additional $60 in the escape. Once free from the car, Mr. Kia ran to a nearby bus for assistance, whereupon the driver called an ambulance and the police. Mr. Kia was treated at St. Luke's Hospital for superficial stab wounds and released the same day.

Detective Wayne Fitzner was assigned to the case the day after the robbery and he conducted preliminary investigations, which established a list of possible suspects. Detective Fitzner checked the 6006 North Jefferson address and discovered that Michael McKibben and Steven McKibben used that residence. He also checked the Waukomis address where Mr. McKibben originally asked Mr. Kia to stop. Detective Fitzner then investigated the Olive Garden, and learned that Steven McKibben was employed there, but that he had been working at the time of the robbery. Based on the information he learned from the manager of the Olive Garden, Detective Fitzner excluded Steven McKibben as a suspect. On April 8, Detective Fitzner interviewed Mr. Kia and showed him an array of possible suspects' photographs. Steven McKibben was not included in the photo line-up, but photos of Michael McKibben and the three other suspects who were connected with the Waukomis address were included. Mr. Kia identified Michael McKibben as the perpetrator.

Mr. McKibben was subsequently arrested and tried on one count of robbery in the first degree and one count of armed criminal action. Both the State and Mr. McKibben presented evidence at the hearing, but Mr. McKibben did not testify. The State offered into evidence Steven McKibben's time card from the Olive Garden, indicating that he was at work when the robbery occurred. Mr. McKibben stipulated to the foundation for the time card, but objected at trial based on hearsay and relevancy. The trial court overruled Mr. McKibben's objections and allowed the time card as an exhibit. The jury returned a guilty verdict on both counts. Thereafter, the judge sentenced Mr. McKibben as a prior offender to life imprisonment for the robbery and twenty years imprisonment for the armed criminal action, with the sentences to run concurrently. Following the trial court's denial of his motion for judgment of acquittal or new trial, Mr. McKibben filed this appeal.

### Evidence of Uncharged Misconduct was Admissible to Provide Complete and Coherent Picture of Charged Crimes

■ As his first point on appeal, Mr. McKibben argues that the trial court erred in permitting the State to present evidence of his conduct after the robbery. Mr. McKibben maintains that Mr. Kia's testimony describing Mr. McKibben biting his ear and stabbing him was evidence of uncharged misconduct, which was used to show his propensity to commit the crime, charged. The State contends that Mr. Kia's testimony regarding the assaults was not propensity evidence, but was evidence which provided the jury with a complete and coherent picture of the events surrounding the robbery.

■ The trial court has broad discretion in deciding whether to admit or exclude evidence. *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989). On appeal, the trial court's ruling as to the admission or exclusion of evidence will not be disturbed unless there has been a clear abuse of discretion. *Id.* The general rule is that evidence of uncharged misconduct is inadmissible to show the defendant's propensity to commit the charged crimes. *State v. Morrow*, 968 S.W.2d 100, 107 (Mo. banc 1998) (quoting *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994), cert. denied, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994)). This rule is to prevent the jury from convicting the defendant based on his or her propensity to

commit such crimes, rather than upon evidence showing that the defendant actually committed the crimes charged. *See State v. Conley,* 873 S.W.2d 233, 236 (Mo. banc 1994).

However, there are exceptions to the rule. Evidence of uncharged misconduct is admissible if it "tends to establish motive, intent, identity, the absence of mistake or accident, or a common scheme or plan." *Morrow,* 968 S.W.2d at 107 (quoting *Harris,* 870 S.W.2d at 810). "[E]vidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged" is also admissible "to present a complete and coherent picture of the events that transpired." *Id.* (quoting *Harris,* 870 S.W.2d at 810). To be admissible, evidence of uncharged misconduct must be "logically relevant (*i.e.,* it must tend to establish guilt for the crime) and legally relevant (*i.e.,* its probative value must outweigh its prejudicial effect)." *State v. Ross,* 923 S.W.2d 354, 356 (Mo.App.1996). "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

In *State v. Skillicorn,* 944 S.W.2d 877, 887 (Mo. banc 1997), the Supreme Court found the defendant's misconduct, which occurred several hours after the events of the crimes charged, was admissible as a "continuation of the sequence of events that presents a coherent picture of [defendant's] crime." Likewise, in *Morrow,* 968 S.W.2d at 107, the Supreme Court held that evidence of uncharged crimes occurring over the course of a three-day crime spree was properly admitted to provide the jury with a fair, complete and coherent picture of the crimes charged.

In this case, evidence of the assaults that occurred after Mr. Kia gave Mr. McKibben the money was necessary to present the jury with "a complete and coherent picture of the events that transpired." *Morrow,* 968 S.W.2d at 107. The robbery and the two assaults on Mr. Kia all happened in an uninterrupted sequence spanning approximately one hour. The two assaults on Mr. Kia were a "continuation of the sequence of events" surrounding the robbery. Excluding the evidence of Mr. McKibben's assaults on Mr. Kia after the robbery would have rendered the sequence incomplete. Accordingly, Mr. McKibben's actions after the robbery were admissible "to present a complete and coherent picture of the events that transpired." *Morrow,* 968 S.W.2d at 107.

The trial court did not abuse its discretion in permitting Mr. Kia to testify about the assaults Mr. McKibben committed upon him following the robbery. Point I is denied.

### Time Card Was Properly Admitted

As his second point on appeal, Mr. McKibben argues that the trial court erred in admitting Steven McKibben's time card from the Olive Garden because the State failed to establish a sufficient foundation for its admission. At trial, counsel for Mr. McKibben stated that Mr. McKibben did not object to the exhibit on the basis of foundation, but objected to it as irrelevant hearsay. The trial court found that the stipulation as to the time card's foundation satisfied the hearsay objection and that the time card was relevant because it tended to prove or disprove a matter at issue in the case, i.e., whether Michael McKibben's brother, Steven McKibben, could have committed the robbery. On appeal, the State argues that because Mr. McKibben stipulated to the foundation and objected only on the basis of hearsay and relevance, he is bound by the stipulation and has not preserved any error for review because he raises the foundational argument for the first time on appeal. The record supports the State's claim that Mr. McKibben has preserved nothing for this court to review.

"'To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory.'"

*Morrow,* 968 S.W.2d at 106 (quoting *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995)). At trial, Mr. McKibben argued that the evidence was hearsay and that it was irrelevant. Now on appeal, Mr. McKibben argues that the State failed to lay a proper foundation for the evidence. He also argues that the trial court should have understood his objection to relate to the foundation of the evidence. However, to preserve an error for appeal, the objection must be specific and " 'call the attention of the trial court to the ground or reason for the objection.' " *State v. Stanley,* 952 S.W.2d 327, 329–30 (Mo.App.1997) (quoting *State v. Bransford,* 920 S.W.2d 937, 944 (Mo.App.1996)). A non-specific objection preserves nothing for appellate review. *Id.*

At trial, counsel for Mr. McKibben stated:

> Judge, pursuant to a stipulation I had with counsel, we're not objecting to the foundation, however I would object to the relevance coming through this witness.

> \* \* \*

> Judge, the problem is this witness never saw this exhibit until today. He testified at the deposition that he didn't ever look at a time card when he excluded Steven McKibben as a suspect.

> And it's not relevant coming from this witness, he didn't work there. He didn't, he doesn't know if the time card is accurate. He doesn't know the hours that person was there.

Counsel's objections were not specific enough to put the trial court or the State on notice that Mr. McKibben intended to retract the stipulation. In fact, Mr. McKibben's counsel expressly affirmed the stipulation and stated that she was not objecting to the time card on the grounds of foundation. Without a specific objection calling the attention of the trial court to the particular grounds or reason for the objection, Mr. McKibben did not preserve his foundational argument for appellate review. *See Morrow,* 968 S.W.2d at 106; *Stanley,* 952 S.W.2d at 329–30.

Because Mr. McKibben's theory on appeal is different from the objection he asserted at trial, nothing has been preserved for appellate review. However, Mr. McKibben asks that this court exercise its discretion and review the admission of the time card for plain error. When a matter is not preserved for appeal, reversal is appropriate only if the appellate court finds plain error. *State v. Howton,* 890 S.W.2d 740, 746 (Mo.App.1995). The plain error standard provides that a ruling shall not be set aside unless the ruling causes manifest injustice or a miscarriage of justice, and the burden of establishing such error is on the appellant. *Howton,* 890 S.W.2d at 746. See also *Morrow,* 968 S.W.2d at 106.

Mr. McKibben has not sustained his burden of persuading this court that admission of the time card was plain error which resulted in manifest injustice or a miscarriage of justice. The time card for Steven McKibben which was admitted into evidence on the basis of Mr. McKibben's stipulation. Mr. McKibben does not present any evidence to show that the time card was not an accurate record of Steven McKibben's hours of work. In fact, Mr. McKibben does not appear to have ever contested the accuracy of the record, so he does not show that there was any manifest injustice or miscarriage of justice in the trial court's action. There is no reason to believe that if Mr. McKibben had been successful in retracting the stipulation to foundation that the State would not have been able to request the opportunity to bring to court the appropriate witness to lay a foundation for the time card. Point II is denied.

The judgment of the trial court is affirmed.

All concur.