STATE of Missouri, Respondent,

v.

Charles PENNINGTON, Appellant.

No. WD 57262.

Missouri Court of Appeals,
Western District.

May 2, 2000.

As Modified June 27, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 2000.

Application for Transfer Denied
Aug. 29, 2000.

David Pettyjohn, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen Butler, Asst. Atty. Gen., Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Charles G. Pennington, Jr., appeals from his conviction following a jury trial for one count of the class A felony of first-degree robbery, § 569.020 [1], and one count of the unclassified felony of armed criminal action, § 571.015. The trial court sentenced Pennington as a prior and persistent offender to concurrent sentences of 20 years imprisonment. On appeal, Pennington asserts the trial court erred in admitting evidence of prior uncharged crimes.

The judgment of the trial court is reversed and remanded for a new trial.

## Factual and Procedural History

This Court reviews the facts in the light most favorable to the verdict. *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). On June 28, 1998, Pennington parked his car at a gas pump island of a Quik Trip store located in Clay County. Pennington used a box knife to slit open the plastic "sock" covering a display of soda stored on the gas pump island. As Pennington loaded the soda into his vehicle, John Boch, an assistant manager of the Quik Trip, pulled into the store's parking lot. Boch witnessed Pennington stealing the soda and pulled his car up to Pennington's car to record the license plate number. Pennington then got back into his car and ran into Boch's car. Pennington put his car in reverse, trying to back away from Boch, and ran into a column supporting the canopy above the gas pumps. Boch then pulled his car forward to prevent Pennington from fleeing the scene.

Pennington exited his vehicle and approached the passenger door of Boch's car. Boch testified that Pennington had a box knife in his hand, threatening Boch that "if you don't back off, I'm going to hurt you." Pennington then tried to open Boch's passenger door. Boch put his car in reverse, backing away from Pennington. As Boch reversed, he accidentally ran over Pen-

nington's leg. Pennington hopped over to his car on one leg and drove away with eight to ten cases of soda in his car. Boch notified the police the following day and provided them with a description of Pennington and his license plate number. Boch also identified Pennington from a photo lineup and later identified him in court.

The jury found Pennington guilty of first-degree robbery and armed criminal action. The trial court sentenced Pennington to concurrent terms of 20 years for each offense. Pennington timely appealed.

## The Trial Court Abused its Discretion By Admitting Evidence of

## Defendant's Uncharged Crimes

Pennington contends that the trial court erred by admitting evidence of Pennington's prior uncharged crimes. Specifically, Pennington claims the trial court erred by admitting evidence that Boch witnessed Pennington stealing beverages at the Quik Trip on two previous occasions. In sustaining a motion in limine prior to trial, the trial court ruled that evidence of Pennington's prior acts of stealing at the Quik Trip would not be admitted. During the trial, the judge decided to allow Boch to testify that he had witnessed Pennington stealing beverages from the store on two previous occasions in order to show "why certain things were done at the time" and "why cars were used the way they were." The court granted Pennington's trial counsel a continuing objection to such testimony. In response to a question by the prosecutor about his familiarity with Pennington, Boch testified that he had seen Pennington stealing beverages twice before at the Quik Trip. Boch also testified that he reported those previous incidents to the police, but the police failed to do anything about his reports. Pennington argues that the trial court improperly admitted the evidence of his uncharged crimes for the purpose of explaining the motive of wit-

1. All statutory references are to the Revised     Statutes of Missouri 1994.

**188**

ness Boch during the incident. He maintains that the admission of this evidence of uncharged crimes violated his constitutional right to be tried only for the crime charged and unfairly prejudiced him.

■■■ Initially, the state contends that Pennington failed to preserve his argument for appellate review because he did not include this claim in his motion for a new trial. Claims of error not presented in a motion for new trial are not preserved for appellate review. *State v. Thurman,* 887 S.W.2d 403, 409 (Mo.App.1994); Rule 29.11(d). Pennington asserts that, under *State v. Frey,* when the trial judge granted his counsel a continuing objection to the uncharged crimes evidence after the judge overruled the motion in limine, the matter was preserved *sua sponte* for appellate review. 897 S.W.2d 25, 28–29 (Mo.App. 1995). In *Frey,* the defendant filed a motion in limine to exclude evidence of prior bad acts. There, as here, the court granted a "continuing objection." The majority (Lowenstein, J. dissenting) held that the objection to such evidence was properly preserved and, therefore, subject to a trial error standard of review rather than a plain error standard. *Frey,* however, is distinguishable and does not apply here. Pennington fails to recognize the necessity, despite a motion in limine, to preserve an objection to evidence at trial *and* to reassert the error in admission of evidence in the motion for new trial. The objection must be preserved at both stages. *State v. Parkus,* 753 S.W.2d 881, 886 (Mo. banc 1988). *Frey* does not indicate whether or not the objection was preserved in the motion for new trial.

■■ The state herein does not contend that Pennington failed to preserve his objection at the time the evidence was introduced. We, therefore, look to the motion for new trial.

The assignment of error in the motion reads:

That error was compounded by the Court's initial ruling sustaining defendant's Motion in Limine on the Friday before trial. The Motion in Limine dealt with uncharged criminal acts, and was sustained. This court then overruled that motion on a request by the prosecutor on the morning of trial, thereby prejudicing defendant's trial strategy. Defendant and counsel were preparing the case as if that type of incident would not be entered into evidence. This Court's changing it's ruling on that motion, and then overruling of the later Motion in Limine regarding Waiving a Knife at Zink resulted in a fundamental shift in trial strategy that prejudiced defendant by necessitating changes in trial strategy and witness preparation. By overruling defendant's Motion in Limine on the morning of trial, after it had been sustained two days previous, the Court denied the defendant his right to due process as guaranteed by the United States Constitution, Amendment XIV, as well as the Missouri Constitution, Article I, Sections 10 and 18(a).

The error alleged, in contrast to the point on appeal, seems to be a claim that prejudice resulted from the court's reversal of its decision on the *motion in limine* and consequentially affected his trial strategy (emphasis added). Pennington relies on *State v. Helm,* 892 S.W.2d 743, 744 (Mo. App.1994), for the proposition that a reference to an overruled motion in limine suffices to preserve the objection to the admission of other crimes evidence where the appellant later objected at trial. Pennington's reliance on *State v. Helm,* 892 S.W.2d 743, 744 (Mo.App.1994) is also misplaced. In *Helm,* the court noted that a point on appeal in the brief referred to error in overruling a motion in limine. Despite the fact that a ruling on such a motion is an interlocutory, non-appealable order, the court found the matter was properly preserved because the objection was renewed at trial. *Id.* The court, therefore, treated the point on appeal as challenging the ruling at trial and not the ruling in limine. *Helm* does not apparently involve the issue

of whether the allegation was preserved in the motion for new trial. The rules make these distinctions as to preservation during trial and post-trial in a new trial motion because they are important. One purpose in both instances is to provide the trial court with an opportunity to correct its own decisions. Other purposes include narrowing the issue on appeal and ensuring that no new or different theory is advanced on appeal. Nevertheless, we find that, on the facts and record of this case, the issue has been preserved for appeal. Rule 29.11(d) provides, *inter alia* "[w]here definite objections or requests were made during trial ... a general statement in the motion of any allegations of error based thereon is sufficient."

We thus consider whether the allegation in Pennington's motion for new trial, although lacking the desired specificity, leaves any doubt as to the ruling intended for review. *State v. Hayes*, 442 S.W.2d 14, 16 (Mo. banc 1969). Here, very specific objections and a detailed record were made twice to the trial judge concerning the evidence that Pennington had allegedly stolen from the Quik Trip twice previously. Detailed grounds for the objection were provided to the trial court during its two considerations of the motion in limine. Despite being granted a "continuing objection," Pennington's counsel objected when the evidence was first offered. The grounds for objection stated on appeal are the same as asserted to the trial court. We do not hold that the requirements of Rule 29.11 are not mandatory nor do we hold that preservation both during trial and in the motion for new trial are not necessary. We find only that, on the record and facts of this case, the allegation of error in the motion for new trial was sufficiently particular to aprise the trial court and this court of the ruling under attack and the reasons therefor. We consequently reject the state's argument that we can only review for plain error and review the point as preserved trial error.

■ The trial court possesses broad discretion in the admission or exclusion of evidence. *State v. McKibben*, 998 S.W.2d 55, 58 (Mo.App.1999). The trial court's admission or exclusion of evidence will not be disturbed on appeal unless the trial court clearly abused its discretion. *Id.*

■ On direct appeal, we review the trial court for prejudice, not mere error, reversing only if the error prejudices the defendant to the degree that the defendant was deprived of a fair trial. *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). Evidence of uncharged crimes is not admissible to prove that a defendant has a propensity to commit other crimes. *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. banc 1998). Propensity to commit a crime is not a proper purpose for admission of evidence because it "may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged." *State v. Bernard*, 849 S.W.2d 10, 16 (Mo. banc 1993).

■ Article I, sections 17 and 18(a) of the MISSOURI CONSTITUTION guarantees a criminal defendant's right to be tried only for the offense charged. The admission of evidence of uncharged crimes violates a defendant's right to be tried only for the offense charged, unless such evidence sufficiently relates to the offense charged. *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998).

■ Evidence of prior uncharged crimes of the defendant "is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *Burns*, 978 S.W.2d at 761. The probative value must outweigh its prejudicial effect because a criminal defendant should not be convicted merely because he is a "bad guy." *State v. Williams*, 976 S.W.2d 1, 4 (Mo.App.1998). Utilizing this standard,

evidence of uncharged crimes is admissible under certain exceptions, specifically if it "tends to establish (1) motive, (2) intent, (3) identity, (4) the absence of mistake or accident, (5) or a common plan or scheme." *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994). Additionally, evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admitted to present "a complete and coherent picture of the events that transpired." *Id.* (internal citations omitted). "In all cases in which evidence of uncharged misconduct is offered, 'the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny.'" *Id.* (internal citations omitted). Admonitions to be "wary of evidence of other crimes are long standing." *State v. Collins*, 669 S.W.2d 933, 936 (Mo. banc 1984). Because evidence of other crimes is highly prejudicial, such evidence should be admitted only when there is "strict necessity." *State v. Williams*, 804 S.W.2d 408, 410 (internal citations omitted).

For the reasons set forth below, we hold that the evidence of Pennington's prior uncharged crimes of stealing beverages from the Quik Trip was inadmissible because: (1) the evidence failed to fall under one of the recognized exceptions and thus lacked a legitimate tendency to directly establish Pennington's guilt of the charged offense; (2) the probative value of the evidence does not outweigh its prejudicial effect; and (3) there was no strict necessity for the admission of the other crimes evidence.

First, we consider whether evidence of Pennington's previous uncharged crimes fits into one of the recognized exceptions and whether it has a legitimate tendency to directly establish Pennington's guilt for the offense charged. The issue of Pennington's identity is undisputed. In his opening statement, Pennington's counsel acknowledged Pennington was present at the scene. Detective Shawn Nichols, the investigating officer, testified that Pennington confessed that he was at the Quik Trip with an intent to steal the soda, that he used a box cutter to cut open the cover over the soda display, and that he asked Boch to move his car because Boch's car prevented him from driving away. This testimony suffices to establish Pennington's identity and motive.

The state contends that evidence of Pennington's other uncharged crimes fits under the exception allowing the admission of such evidence to establish a complete and coherent picture of the circumstances surrounding the offense. The state also asserts the evidence was admissible to show why Boch tried to block Pennington's car from leaving the scene in apparent violation of company policy not to attempt to apprehend shoplifters. In the process, Boch's vehicle ran over Pennington's leg, fracturing two bones. Boch did not call the police until thirteen hours later. It is claimed that Boch feared possible job termination, being sued, or even his own arrest as a result of the attempted apprehension. It is also claimed that because the police took no action regarding the first two thefts that Boch's intention and delay in reporting the crime are thereby explained. The state claims it was legitimately entitled to explain these facts by use of the uncharged crimes evidence.

The state mischaracterizes the exception. In *State v. Harris*, 870 S.W.2d at 810, the Supreme Court explains the exception as follows: "An additional exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged. This evidence is admissible to present a complete and coherent picture of the events that transpired." The state focuses on the second sentence, ignoring the rationale behind any of the exceptions. Such evidence is admissible only when it has a legitimate tendency to prove the defendant guilty of the *crime charged.* Thus,

evidence of other crimes has been admitted to present a complete and coherent picture where it is part of the *res gestae* of the charge being tried. *State v. Flenoid,* 838 S.W.2d 462 (Mo. App. 1992). It has also been admitted where it was "a continuation of a sequence of events" that occurred only hours later after a murder. *State v. Skillicorn,* 944 S.W.2d 877, 887 (Mo. banc 1997).

The proper exception requires that the evidence of the uncharged crime be "part of the circumstances or the sequence of events surrounding the offense charged." *Id.* In the present case, Pennington's prior uncharged criminal activity was not a part of the circumstances or sequence of events surrounding the offense charged. Although his past acts of misconduct may have helped to provide a "complete and coherent picture" of Boch's actions, the evidence is not admissible under this exception for two reasons. First, Pennington's prior uncharged crimes were not part of the circumstances of the offense charged or part of the sequence of events surrounding the offense charged. The previous acts were not part of the incident leading to Pennington's charges at issue in this case. Second, no authority cited by the state or found by this court has ever held that evidence of other crimes is admissible to explain the motive of a *witness* in the course of the offense charged. Nor does this case fall within those limited cases where a victim's mental state is relevant because of a claim of accident or self-defense by a defendant. *State v. Nastasio,* 957 S.W.2d 454, 458 (Mo.App.1997). In determining whether such evidence is admissible, the analysis focuses on the identity, motive, et cetera of the defendant, not of a witness or any other individual. Boch's testimony concerning Pennington's prior criminal conduct fails to fit into any exceptions cited by the state. It lacks a legitimate tendency to directly establish Pennington's guilt of the charged offense and, therefore, is not logically relevant.

Even if the challenged evidence were logically relevant, we would consider whether evidence of Pennington's uncharged crimes is legally relevant. We must determine whether the probative value of the evidence exceeds its prejudicial effect, thereby making the evidence legally relevant. "It certainly is not enough to show that the person on trial committed one or more other crimes of the same general nature in the vicinity of the place where he is charged with committing the crime for which he is on trial...." *Williams,* 804 S.W.2d at 410. Even if the evidence arguably possessed some probative value, its probative value failed to exceed its prejudicial effect. Boch's testimony that he had witnessed Pennington steal beverages from the store on two previous locations was highly prejudicial and should not have been admitted because it also lacked legal relevance. The admission of the evidence was not strictly necessary. The admission of this evidence injected collateral matters and facts into the trial not related to Pennington's guilt or innocence of the crimes charge.

This was not a case where the evidence of uncharged crimes was casual or vague. The prosecution made numerous references to these events during testimony and again in closing argument. The defense itself was forced to respond by bringing out from other witnesses that Boch had never claimed until trial that Pennington had stolen from the store previously. Given the fact that the principal evidence of Pennington's guilt of first-degree robbery and armed criminal action came from Boch's testimony, as well as the inherent prejudice from such evidence, we do not believe that the error was harmless. The trial court abused its discretion in admitting the evidence of Pennington's prior uncharged crimes. The trial court's error prejudiced Pennington to the degree that he was deprived of his right to a fair trial. Therefore, the judgment is reversed and the cause remanded for a new trial.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.