**STATE of Missouri, Plaintiff–Respondent,**

v.

**Larry E. MAHONEY, Defendant–Appellant.**

No. 24156.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 27, 2002.

Motion for Rehearing or Transfer Denied March 19, 2002.

Application for Transfer Denied April 23, 2002.

cedures are unchanged in the 2000 revision of   the statute.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General and Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Larry E. Mahoney ("Defendant") was charged with two counts of forcible rape,

§ 566.030,[1] three counts of forcible sodomy, § 566.060, and one count of kidnapping, § 565.110. A jury convicted him on all counts. On this appeal, Defendant contends that the trial court erred in overruling his objection to and motion to strike testimony relating to what he describes as prior bad acts, and in overruling his request for a mistrial after testimony was given that the victim ("A.N.") was a virgin prior to the assaults. We find no reversible error and affirm the judgment.

Defendant does not challenge the sufficiency of the evidence to sustain the jury verdicts. The facts viewed in the light most favorable to the verdicts reveal that at approximately 2:00 a.m. on April 24, 1999, A.N. received a phone call from Steven Willard ("Willard"), who asked her if she wanted to attend a party at his house. At that time, A.N. was in the seventh grade and Willard in the eighth. Defendant, who is Willard's stepfather, also spoke with A.N. during the phone conversation and made arrangements to pick her up at a nearby Hardee's restaurant. A.N. then "snuck out" of the house without asking her mother's permission to attend the party.

During the walk to Hardee's, A.N. was verbally harassed by a man. When Defendant and Willard arrived, A.N. told them about the comments made by the man and Defendant remarked, "Well, if he has a problem with you, he has a problem with us." Defendant then pulled out a gun, raised it outside of the driver's side window, and fired it "straight up into the air."

Defendant, Willard, and A.N. then drove to the apartment of one of Defendant's friends, where they stayed for thirty to forty minutes. From there, they went to Lake Springfield. A.N. had asked Defendant to drop her off at the party before he went to the lake, but Defendant told her "it would only take a few minutes." Once at Lake Springfield, they stopped at a boat ramp and all got out of the car, but contrary to what A.N. thought was going to occur, Defendant did not dispose of the gun. Instead they all got back into the car and drove to another location at the lake, where A.N. was again under the impression that Defendant intended to dispose of the gun.

Instead, Defendant pointed the gun at A.N. and told her to take off her clothes. The first act of forcible sodomy occurred at this point. During the act, Defendant held the gun to A.N.'s neck. She was also forced to perform oral sex on Willard and was raped by him.

At some point, all three got back into the car and drove to another area of the lake. Once at that location, A.N. was forced again to perform oral sex on Defendant. The gun was pointed at or touching her neck during the act. Defendant also raped her twice while at this location. Following that, the third act of forcible sodomy by Defendant occurred.

When the three arrived back at Defendant's house at approximately 5:45 a.m., Defendant made A.N. go to the bathroom where she took a shower. Defendant and another man then drove A.N. home after she said that she needed to get home before her mother woke up.

A.N. went to bed as soon as she arrived home, and was awakened a few hours later by a telephone call from a friend. A.N. told her friend what had happened, and then told her mother. A.N.'s mother called the police and took her to the hospital, where a sexual assault exam was administered. Defendant was charged with, and later convicted of, two counts of forc-

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

ible rape, three counts of forcible sodomy, and one count of kidnapping.

In his first point, Defendant claims that the trial court abused its discretion in overruling his objection to, and motion to strike, Willard's testimony that he made threats against Defendant because Defendant had been physically abusive toward Willard and Willard's mother. Defendant argues that the testimony did not fit any of the exceptions to the general rule under which "evidence of previous unrelated crimes is inadmissible, unless it 'has a legitimate tendency to establish a defendant's guilt of the crime charged.'" *State v. Helm,* 892 S.W.2d 743, 744–45 (Mo.App. E.D.1994).

Prior to trial, the State filed a motion in limine asking the trial court, in part, to prevent the defense from presenting evidence concerning prior bad acts committed by Willard. Defendant's counsel argued that granting the motion would prevent him from introducing evidence that Willard made threats toward Defendant, which were relevant to show bias. The State responded that it did not intend for the motion in limine to prevent Defendant from asking about the threats, but argued that, in addition to testimony regarding the existence of the threats, Willard should be allowed to testify about why he made the threats. The trial court granted the State's motion in limine, "with the exception of acts of [Willard] as directed toward [Defendant]." It also indicated that it did not consider Willard's motivation in making the threats to be admissible.

During the State's direct examination of Willard, the prosecutor approached the bench to inform the court that she intended to ask Willard about the threats he had made toward Defendant. The prosecutor further noted that she would "wait and see" how Willard responded to questions regarding the existence of the threats be-

fore she approached the bench in reference to asking him any additional questions about why he had made the threats. The court allowed the prosecutor to proceed, cautioning her to "[b]e careful to control him (Willard)," so that he would not offer more testimony than was required to answer any specific question. The prosecutor then asked Willard whether he had ever threatened to hurt Defendant, and Willard responded that he had.

During cross-examination, Defendant asked Willard about the specifics of the threats and elicited testimony that he had threatened to kill Defendant as he slept and also threatened to have his (Willard's) friends kill Defendant in a drive-by shooting. On re-direct, the prosecutor asked Willard why he had made the threats. Willard responded that he had "threatened [Defendant's] life because I was getting tired of him hitting on me and I was getting tired of him hitting on my mom and I basically didn't want to put up with it anymore, and if it kept going[,] then I was going to follow through with my threats because I've been hit on I don't know how many times by him."

At this point, the trial court stopped Willard from continuing his testimony and a conference was held in which Defendant's counsel objected to and moved to strike Willard's testimony "on the grounds that [it] is improper prior bad acts evidence." Defendant's counsel also noted that the prosecutor did not approach the bench before asking Willard why he had made the threats. The prosecutor responded that if Defendant's counsel "wanted to object[,] he doesn't wait till [Willard] says it all and then object." The trial court overruled Defendant's objection and further admonished, "Don't pursue it any further."

■ "A trial court operates within a wide latitude of discretion when determining the admissibility of evidence." *Id.* at 744. A trial court's decision regarding the admissibility "of evidence will not be disturbed on appeal unless the trial court clearly abused its discretion." *State v. Pennington*, 24 S.W.3d 185, 189 (Mo.App. W.D.2000). "A criminal defendant has the right to be tried only for the crimes for which he has been charged." *State v. Watson*, 968 S.W.2d 249, 253 (Mo.App. S.D.1998). Evidence of other crimes or bad acts committed by a defendant can be very prejudicial and allowing such evidence to be admitted at trial "tends to run counter to the rule that prevents using a defendant's character as the basis for inferring guilt." *Id.* In addition, evidence of a defendant's prior crimes or bad acts is not "admissible to explain the motive of a *witness.*" *Pennington*, 24 S.W.3d at 191. However, the trial court is in the best position to decide whether evidence of prior crimes or bad acts should be admitted, "for it can best determine whether the relevance is outweighed by any potential prejudice." *Helm*, 892 S.W.2d at 744.

■ In reviewing this point, we first note that a ruling on a motion in limine does not preserve anything for appeal. *See State v. Cosby*, 976 S.W.2d 464, 467 (Mo.App. E.D.1998). "The trial court must be given the opportunity to reconsider its ruling during the trial in light of the evidence that has been adduced in order to preserve a claim for appeal." *State v. Winder*, 50 S.W.3d 395, 406 (Mo.App. S.D. 2001). Thus, any arguments or objections Defendant made during the presentation of the State's motion in limine regarding whether the State should be allowed to introduce evidence regarding Willard's motivation for the threats preserved nothing for review.

■ Secondly, beyond the pretrial stage, it is necessary "to preserve an objection to evidence at trial *and* to reassert the error in admission of evidence in the motion for new trial." *Pennington*, 24 S.W.3d at 188. While Defendant did assert the error within his motion for new trial, he failed to preserve the issue because of his lack of timely objection at trial. *See Cosby*, 976 S.W.2d at 467. "Failure to object at the earliest opportunity to the admission of evidence ... constitutes a waiver of the claim." *Id.* In the instant case, Defendant failed to object to the prosecutor's question as to why Willard made the threats. Further, Defendant failed to object until after the trial court had stopped Willard from continuing his testimony. "In such cases, where an objection is made after the testimony has already been given, the objection comes too late." *State v. Delgado*, 774 S.W.2d 549, 551 (Mo.App. S.D.1989).

■ Thus, Defendant's objection is not subject to an abuse of discretion standard of review. *See Pennington*, 24 S.W.3d at 188. Rather, we review the point under a plain error standard. *See id.* An issue "not preserved may be considered only if the [C]ourt finds that manifest injustice or miscarriage of justice has resulted therefrom." *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998); *see also* Rule 30.20.[2] To show a manifest injustice that affects substantial rights, Defendant's burden requires that he "go beyond a mere showing of demonstrable prejudice." *Winder*, 50 S.W.3d at 406. "Defendant must demonstrate that manifest injustice or a miscarriage of justice will occur if the error is not corrected." *Id.*

Here, while Defendant has shown that the State either explicitly failed to follow

---

**2.** References are to Missouri Rules of Criminal Procedure (2001), unless noted otherwise.

or misinterpreted the trial court's request to approach the bench before "broach[ing] the subject" of Willard's motivation for the threats, Defendant has not met his burden of showing a manifest injustice occurred that affected his substantial rights. During pretrial proceedings, Defendant argued that the trial court should allow evidence of the existence and types of threats Willard made toward Defendant, noting that such testimony would be relevant to show Willard's bias toward Defendant. While Defendant argues on appeal that the additional testimony regarding Willard's motivation for the threats was improperly admitted, that evidence also could be viewed as supporting the claim of bias by Willard toward Defendant. No manifest injustice occurred. The point is therefore denied.

■ Defendant's second point is that the trial court abused its discretion in overruling his request for a mistrial after Officer Gann ("Gann") of the Springfield Police Department testified that A.N. told her that she was a virgin prior to the sexual assaults. Defendant made an oral motion in limine asking the trial court to prevent the State from presenting evidence that A.N. was a virgin prior to the sexual assaults. The State noted that it did not intend to introduce such evidence, but that the doctor who examined A.N. at the hospital might consider the fact relevant to his findings. The trial court sustained the motion and asked the State to approach the bench prior to the doctor's testimony if it determined that whether A.N. was a virgin was a relevant part of his testimony.

During direct examination, the prosecutor asked Gann about a conversation the officer had with A.N. at the hospital. Specifically, the prosecutor asked, "[W]hat did [A.N.] tell you?" Gann responded that A.N. "told me that she had some blood in

her underwear and that she was a virgin prior to the assault." Defendant's objection was sustained.

The trial judge and the attorneys then held a conference during which the prosecutor maintained that Gann had been instructed not to include in her testimony any reference to whether A.N. was a virgin. Defendant moved to strike the testimony and then requested a mistrial. The trial judge denied Defendant's request for a mistrial and asked, "Are you sure you want me to move to strike? I'm afraid that simply reemphasizes the testimony. I will if you ask me to." Defendant's counsel responded, "Judge, I believe that if I ask you to strike it and ask you to instruct the jury to not consider the statement that she said that she was a virgin[,] that it would do more damage than just moving on." The trial judge reiterated that he agreed, but was "willing to do what you choose." Defendant's counsel noted that he would "simply just ask for a mistrial."

■ The standard of review for a ruling on a request for a mistrial is abuse of discretion. *See State v. Webber*, 982 S.W.2d 317, 323 (Mo.App. S.D.1998). "[W]e will not reverse a trial court's exercise of discretion absent a showing of clear abuse and substantial prejudice resulting to the defendant." *Id.* "The declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way." *Id.* at 322.

It is not an uncommon occurrence at trial for a witness to unexpectedly volunteer an inadmissible statement. *See State v. Silas*, 885 S.W.2d 716, 720 (Mo.App. W.D.1994). Since the trial court has observed the event that led to the request for a mistrial, it is in the best position to determine whether the incident had a prejudicial effect on the jury. *See Webber*, 982

S.W.2d at 322. Further, when "a witness volunteers inadmissible information, the trial court is in the best position to determine ... what measures, if any, are necessary to cure that effect." *State v. Burch,* 939 S.W.2d 525, 528 (Mo.App. W.D.1997).

 To determine whether the uninvited statement had a prejudicial effect, we consider "five factors: (1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or whether the prosecutor deliberately attempted to elicit the comments; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; (3) whether the comments were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and (5) whether in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt." *State v. Witte,* 37 S.W.3d 378, 383 (Mo.App. S.D. 2001); *see also Silas,* 885 S.W.2d at 720.

In the instant case, the prosecutor told the trial court that Gann had been specifically instructed not to testify about that portion of A.N.'s statement. The trial court obviously believed the prosecutor's implicit denial that the statement was purposely elicited. In addition, no other reference to A.N.'s statement was made. Accordingly, it does not seem to have been emphasized. As for the third factor, the statement by Gann made no specific reference to crimes committed by Defendant. Regarding the fourth factor, the trial court offered to grant Defendant's motion to strike, under which it would have instructed the jury to disregard the comment. Defendant declined the court's offer. "We cannot conclude that the statement ... was prejudicial and so impressive that its effect could not have been removed by direction to the jury. The fact that ... [D]efendant sought no relief other than a mistrial cannot aid him." *State v. Thurlo,* 830 S.W.2d 891, 894 (Mo.App. S.D.1992). Our analysis of the fifth factor is in line with the fourth. Defendant does not challenge the sufficiency of the evidence, and it does not appear that the comment had a decisive effect on the jury's determination of Defendant's guilt. This is especially true in light of the significant strength of the State's case. Defendant's second point is denied.

The judgment is affirmed.

PREWITT, J., and RAHMEYER, J., concur.