STATE of Missouri, Plaintiff–Respondent,

v.

Donald R. PHILLIPS, Defendant–Appellant.

No. 25666.

Missouri Court of Appeals, Southern District, Division One.

May 17, 2004.

Kent Denzel, Assistant Public Defender, Columbia, for movant–appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, for respondent–respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Donald R. Phillips ("Defendant") was convicted of murder in the second degree, in violation of § 565.021, RSMo 2000, armed criminal action, in violation of § 571.015, RSMo 2000, and burglary in the first degree, in violation of § 569.160, RSMo 2000. He was sentenced as a prior and persistent offender to consecutive sentences of life imprisonment, 30 years, and 15 years for the above counts, respectively.

Defendant raises one point in this appeal and contends that the trial court plainly erred and abused its discretion in permitting the State to introduce evidence of uncharged crimes, specifically that Defendant planned to steal anhydrous ammonia and manufacture methamphetamine. The evidence, according to Defendant, was not admissible under any exception to the rule prohibiting such evidence.

### Facts

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. On February 22, 2002, Defendant met with Michael Croy and Jason Lovell at a car wash in Fisk, Missouri, and the three men discussed their plans for that night, which were to burglarize Bud's Country Store, steal anhydrous ammonia, and "make some dope" (manufacture methamphetamine). The three men ingested methamphetamine while they were together.

From the car wash, the three men drove to the convenience store on T Highway in Butler County in Croy's vehicle. They parked the vehicle, a red Oldsmobile

Achieva, by a shed close to the store, walked toward the store, and watched a truck leave. Defendant entered the building by picking the lock on one of the doors. Alarm bells rang when the door opened.

Soon after Defendant entered the store, Lovell, who was sitting outside the building along with Croy, saw the owner of the convenience store, Bud Ayers, pull up in his vehicle. Lovell and Croy ran back to the vehicle and, while they were running, they heard two shots. Defendant did not run back to the car with them; he was still in the store.

Defendant did reach the car quickly after Lovell and Croy, and Defendant told them, "It was kill or be killed." As the three drove back to Fisk at a high rate of speed, with Croy driving, Defendant told them, "No one better say nothing of this or else." As they were driving, Lovell noticed that Defendant had some money and receipts in his hands.

At approximately 6:52 p.m. on February 22, 2002, the Butler County Sheriff's Department received a call from an alarm company that the alarm was sounding at the convenience store. A deputy was dispatched to the scene, and he saw a white pickup parked in front of one of the doors to the store, with its motor running and lights on, and the driver's side door was standing open. When the deputy entered the store, he saw the light on in a back office. The deputy went into the office and discovered Ayers' body.

Ayers had been shot with a .12 gauge shotgun and had a wound to the chest that caused his death. Ayers' death was ruled a homicide.

People living in the vicinity of the convenience store reported hearing two gunshots in quick succession. A driver near the store saw a pickup in the parking lot of the convenience store and was subsequently passed by a red car traveling "real fast" that nearly "bl[ew] [the driver] off the highway."

The police eventually interviewed Lovell and Croy, based partly on a tip that Lovell had attempted to purchase a gun because Defendant and Croy had killed Ayers and were now threatening Lovell's life. Defendant had also threatened Croy, shooting at him twice after the murder. In initial interviews with the police, Lovell and Croy denied any involvement with the crimes. Later, however, both admitted their involvement. Lovell and Croy each entered into agreements with the State in exchange for their cooperation and testimony.

While being held in the Mississippi County Jail, Defendant spoke to another inmate, and Defendant told the inmate of his involvement in the burglary and murder. Defendant told the inmate that he and two others had gone to rob a store and the owner interrupted them, and that they shot the owner with the owner's shotgun.

Defendant was charged with one count each of murder in the second degree, in violation of § 565.021, armed criminal action, in violation of § 571.015, RSMo 2000, and burglary in the first degree. Following jury trial, he was convicted on all counts and was sentenced as a *prior and persistent* offender to consecutive sentences of life imprisonment, 30 years, and 15 years, respectively, for the counts.

## Discussion

■ Defendant's sole point on appeal is that the trial court plainly erred and abused its discretion by allowing the State to introduce evidence of uncharged crimes, specifically that Defendant planned to steal anhydrous ammonia and manufacture methamphetamine. According to Defendant, the evidence was not admissible under any exception to the rule prohibiting

such evidence and thus, a manifest injustice occurred and the Court must grant a new trial to cure the prejudice. The State argues that the evidence was admissible to present a complete and coherent picture of the events that transpired.

Croy testified that he, Defendant, and Lovell had plans the night of the murder to burglarize Bud's Country Store, steal anhydrous ammonia, and "make some dope." Lovell testified that their plan was to burglarize the convenience store, as well as "[g]et some money, .... [s]teal some anhydrous[,] .... [a]nd go manufacture some methamphetamine."

■ Defendant concedes that he failed to object to this testimony. As nothing is preserved for review, Defendant is, at best, entitled to plain error review under Rule 30.20. *State v. Stanley*, 952 S.W.2d 327, 329–30 (Mo.App.1997). Plain error review mandates that Defendant bears the burden of showing that the trial court's action was not only erroneous, but that the error so substantially affected his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *Id.* at 330.

■ Defendant is correct that, under the general rule, evidence of uncharged crimes is inadmissible to show the defendant's propensity to commit such crimes. *State v. Pettit*, 976 S.W.2d 585, 590 (Mo. App.1998). There are exceptions to the general rule, however, and such evidence may be admitted if it tends to establish motive, intent, the absence of mistake or accident, or a common plan or scheme. *State v. Mitchell*, 975 S.W.2d 191, 197 (Mo. App.1998).

■ In addition, an exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense(s) charged. *State v. Morrow*, 968 S.W.2d 100, 107 (Mo. banc 1998). Under this exception, the evidence is admissible to present a complete and coherent picture of the events that transpired. *Id.* The State, however, may not ask a defendant about unrelated criminal misconduct unless the conduct is related to the crime(s) with which defendant was charged. *Mitchell*, 975 S.W.2d at 197.

■ As with any other evidence, evidence admitted under an exception to the general rule must still be both logically relevant (tend to establish guilt for the crime(s) with which the defendant is charged) and legally relevant (probative value outweighs prejudicial value). *Pettit*, 976 S.W.2d at 590. As to the probative value and prejudicial effect of such evidence, the balancing of the value and effect of the evidence is within the sound discretion of the trial court. *Id.*

We agree with the State that the evidence of the total plan of Defendant, Lovell, and Croy that night contributed to the complete and coherent picture of the events that transpired, and was relevant to the understanding of the circumstances surrounding, and the sequence of, the events. We also find that the evidence met the motive exception, in that the need for money obtained from the burglary was necessary for Defendant and the other two men to complete their plan of manufacturing methamphetamine.

Defendant has not met his burden of showing manifest injustice. We cannot say that the trial court committed plain error. Defendant's point is denied.

### Conclusion

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.