STATE of Missouri, Respondent,

v.

Steven Eugene JOHNSON, Appellant.

No. 26301.

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 2005.

---

**922**

Ellen H. Flottman, Columbia, for Appellant.

· Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

ROBERT S. BARNEY, Judge.

Steven Eugene Johnson ("Appellant") appeals his conviction by a jury for statutory sodomy in the first degree, a violation of section 566.062.1.[1]  Following a jury trial, the trial court sentenced him to eight years imprisonment.  As explained more fully below, in his sole point on appeal Appellant maintains the trial court erred in admitting into evidence a purported act of inappropriate sexual touching by Appellant on a person other than the victim herein.  We reverse the judgment of the trial court.

Appellant does not challenge the sufficiency of the evidence to support the judgment.  This Court accepts as true all evidence supporting the verdict, including all favorable inferences therefrom and, as a general rule, disregards all contrary evidence and inferences.  *State v. Dunn,* 21 S.W.3d 77, 79 (Mo.App.2000).

The record reveals that on April 13, 2003, thirteen-year-old N.T. and her friend, fifteen-year-old J.G., spent the night at the home of twenty-one-year old Amanda Brake ("Brake").[2]  Brake shared a home with Appellant, who was forty-three years old, though the two were not involved in a romantic relationship.  At

---

1.  "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." § 566.062.1. Deviate sexual intercourse is defined in section 566.010(1) as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person."

All statutory references are to RSMo 2000 unless otherwise stated.

2.  We use the initials of the victim and any other minors mentioned in the opinion in order to protect their identity.  According to the record, the girls knew Brake because she previously dated J.G.'s brother.

Brake's house, the three young women "watched TV;" drank beer; danced; talked; and, listened to the radio. Appellant and some of his friends arrived at the home around 8:00 p.m.

Brake, J.G., and N.T. went to bed in Brake's room at around 4:00 a.m.[3] According to N.T., she was awakened at about 6:00 a.m. When she awoke, Appellant was leaning down over her, her pajama pants and underwear were pulled down around her knees, and Appellant "had his finger inside of [her] vagina." N.T. "kind of kicked [Appellant] off of [her] and rolled over and squeezed [her] legs really tight together. And then [Appellant] came back and tried to rub [her] leg, and [she] kicked him again and acted like [she] was sleeping. And then [Appellant] got up and left the room...." N.T., who was "scared[,] nervous and frightened," then tried to wake up Brake and J.G. When she was unable to wake them and after she heard Appellant go into the bathroom, N.T. gathered her things and "ran over to [her friend V.H.'s] house as fast as [she] could."[4]

In July of 2003, an informant told Webster County Sheriff's Department Investigator Rick Hamilton ("Hamilton") that Appellant "had sexual relations with a 13–year–old girl." Hamilton initiated a hotline call to the Missouri Division of Family Services and they arranged for N.T. to be interviewed at the Child Advocacy Center. Hamilton then questioned Appellant. Appellant told Hamilton that he did not remember "what [he] did with the girls that night."

The record also shows that during the trial, in addition to the testimony from N.T., Respondent ("the State") planned to call J.G. to testify that Appellant had touched her inappropriately. Appellant filed a motion in limine seeking to exclude J.G.'s testimony relating to his commission of "other bad acts" against her. At the hearing on the motion in limine, Appellant's counsel argued that J.G.'s testimony would be "prejudicial to [Appellant]" in that the State had not "charged him with the allegation involving [J.G.];" therefore, her testimony "would deny him a fair trial ..." and was not admissible as an exception to the prohibition against the admission of prior misconduct evidence. In response, the State argued, in pertinent part, that J.G.'s testimony was relevant and fell within the exception to the use of uncharged prior misconduct, because the event detailed in J.G.'s testimony was "part of the circumstances or sequence of events surrounding the offense charged ... [and was necessary] to present a complete and coherent picture of what transpired." The trial court overruled Appellant's motion in limine. When J.G. subsequently took the stand, Appellant objected on the same basis raised in the motion in limine. The trial court overruled the objection and noted Appellant's continuing objection to J.G.'s testimony.

J.G. then testified that on the morning in question she awoke at 8:00 a.m. in Brake's house to find Appellant rubbing her vagina on the outside of her jeans. When Appellant realized that J.G. was awake, he said, "Why don't you go into the living room with me?" J.G. told Appellant

---

**3.** Brake's bedroom did not have an actual bed in it; instead, it appears that the three young women slept on a mattress in the corner of the room with their heads pointed toward the wall and their feet pointed toward the bedroom door.

**4.** V.H., who had been with N.T. and J.G. for a period of time the previous evening, lived about a block from Brake's home.

that she wanted to lay back down and Appellant left the room. J.G. then gathered her shoes and her "hoodie," and left Brake's house.

As heretofore related, following a jury trial, Appellant was convicted of one count of statutory sodomy in the first degree and was sentenced by the trial court to eight years in prison. This appeal followed.

In his sole point on appeal, Appellant maintains the trial court abused its discretion in overruling Appellant's motion in limine and "admitting evidence of [A]ppellant's alleged acts against [J.G.]." He asserts that the admission of J.G.'s testimony deprived him of his due process rights and his constitutional right to be tried only for the crime with which he was charged. He also asserts that "any probative value that this improper character evidence may have had to shed light on any material issue was clearly outweighed by its prejudicial impact and made it more likely that the jury would convict [A]ppellant on the charged offense related to [N.T.]."

■ Trial courts have broad discretion in determining whether to admit or exclude testimony, and an appellate court will reverse only upon a showing of a clear abuse of discretion. *State v. Simmons*, 944 S.W.2d 165, 178 (Mo. banc 1997). " 'We review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.' " *Dunn*, 21 S.W.3d at 85 (quoting *State v. Santillan*, 1 S.W.3d 572, 579 (Mo.App. 1999)) (internal quotation omitted).

■ It is generally recognized that a criminal defendant has a right to be tried only for the offense for which he is charged. *State v. Pennington*, 24 S.W.3d 185, 189 (Mo.App.2000). "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998). "Propensity to commit a crime is not a proper purpose for admission of evidence because it 'may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged.' " *Pennington*, 24 S.W.3d at 189 (quoting *State v. Bernard*, 849 S.W.2d 10, 16 (Mo. banc 1993), *superceded in part by* § 566.025, RSMo 1994). " 'Proffered evidence will run afoul of th[is] rule ... if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes.' " *State v. Wallace*, 952 S.W.2d 395, 397 (Mo.App.1997) (quoting *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989)).

■ However, "[e]vidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial...." *Bernard*, 849 S.W.2d at 13. Such evidence "is legally relevant, in that its probative value outweighs its prejudicial effect." *Id.*

■ "*Bernard* recognizes five categories of exceptions to the general rule prohibiting admission of evidence of uncharged misconduct and adds a sixth exception." *State v. Roberts*, 948 S.W.2d 577, 591 (Mo. banc 1997). "Such evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of

one tends to establish the other;[5] (5) the identity of the person charged with the commission of the crime on trial or (6) a signature modus operandi [where nearly identical incidents are so unusual and distinctive as to corroborate the victim's testimony]." *Id.* *Roberts* notes that the court in *State v. Skillicorn,* 944 S.W.2d 877, 887 (Mo. banc 1997), acknowledged "a seventh category permitting evidence of a continuation of a sequence of events that assist in painting a coherent picture of the crime." *Roberts,* 948 S.W.2d at 591. "The State, however, may not ask a defendant about unrelated criminal misconduct unless the conduct is related to the crimes with which defendant was [actually] charged." *State v. Phillips,* 134 S.W.3d 54, 57 (Mo.App.2004). "The list of exceptions to the general rule is not exclusive but, in each instance, announce a judicial conclusion that the prior-bad-acts evidence is both logically and legally relevant." *Roberts,* 948 S.W.2d at 591; *see State v. Jacobs,* 939 S.W.2d 7, 10 (Mo.App.1997). "This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court." *State v. Shaline,* 793 S.W.2d 167, 171 (Mo.App.1990). "In all cases in which evidence of uncharged misconduct is offered, 'the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny.'" *Burns,* 978 S.W.2d at 761 (quoting *State v. Holbert,* 416 S.W.2d 129, 132 (Mo.1967)). "Admonitions to be wary of evidence of other crimes are long standing." *Pennington,* 24 S.W.3d at 190.

▬▬ Save for certain factual circumstances set out in section 566.025 involving minors under fourteen years of age,[6] "'[i]n Missouri, the prosecution may show a defendant's propensity for illicit sexual relations with the prosecuting witness but similar sexual crimes with other persons are generally inadmissible for the purpose of showing propensity.'" *State v. Brooks,* 810 S.W.2d 627, 631 (Mo.App.1991) (quoting *State v. Young,* 661 S.W.2d 637, 639 (Mo.App.1983)). "'Where sodomy is the crime charged, evidence that [the] accused committed the same offense, or had improper relations, with a person other than the one named in the indictment, is as a rule held to be inadmissible.'" *State v. Atkinson,* 293 S.W.2d 941, 943 (Mo.1956) (quoting 22 C.J.S. *Criminal Law* § 691). "Furthermore, in considering this question, it should be noted that to admit proof of crimes other than the one with which

---

**5.** "The common scheme or plan theory is not a 'series of crimes' theory in which the evidence of one crime may be offered to show the defendant's propensity to engage in the crime charged." *State v. Conley,* 873 S.W.2d 233, 236 (Mo.1994).

**6.** Section 566.025 states:
> In prosecutions pursuant to this chapter or chapter 568, RSMo, of a sexual nature involving a victim under fourteen years of age, whether or not age is an element of the crime for which the defendant is on trial, evidence that the defendant has committed other charged or uncharged crimes of a sexual nature involving victims under fourteen years of age shall be admissible for the purpose of showing the propensity of the defendant to commit the crime or crimes with which he or she is charged unless the trial court finds that the probative value of such evidence is outweighed by the prejudicial effect.

We note that a prior version of section 566.025, RSMo 1994, which *did not* require the trial court to determine whether the probative value of such evidence is outweighed by the prejudicial effect, was declared unconstitutional by the Missouri Supreme Court in *Burns,* 978 S.W.2d at 762. Appellant does not directly challenge the constitutionality of the latest enacted version of section 566.025.

the accused is charged would require him to defend any number of charges about which the indictment gives him no information." *Id.* at 943–44. "Such proof, especially as to crimes such as sodomy, would also be likely to have a decidedly prejudicial effect upon the jury." *Id.*

We first begin by noting that the cases primarily relied upon by the State, supporting its proposition that J.G.'s testimony was permissible, involve evidence of a common scheme or plan, not evidence of a sequence of events surrounding the offense charged.[7]

Secondly, it is our view that the State's reliance on *State v. Barrett,* 41 S.W.3d 561, 564 (Mo.App.2001), is misplaced because in *Barrett* the evidence which was admitted related to the *Barrett* defendant's prior bad acts against the victim in that case. It has long been held that evidence of uncharged sexual conduct with the same victim "is admissible to establish motive, intent, absence of mistake or accident, or a common scheme or plan." *State v. Boulware,* 923 S.W.2d 402, 405 (Mo.App.1996). Here, the evidence which the State sought to admit related not to Appellant's prior bad acts with the victim, N.T., but his prior bad acts with J.G.; accordingly, *Barrett* is inapposite.

Thirdly, although the State relies on *State v. Dalton,* 587 S.W.2d 644, 645 (Mo. App.1979), in support of its contention that J.G.'s testimony was logically and legally relevant, *Dalton* does not assist the State. As explained in *Bernard,* the *Dalton* court "affirmed the trial court's admission of evidence of various acts of sexual misconduct committed against two brothers, placed briefly in the care of the defendant." *Bernard,* 849 S.W.2d at 15. "The court found the evidence admissible under the common scheme or plan exception in part because the defendant *exercised control and custody* of the boys and in part because the various acts of sexual misconduct, both charged and uncharged, occurred during an approximately one-hour period." *Id.* (emphasis added).

*Dalton* is factually dissimilar to the present matter. In *Dalton,* the defendant's acts toward the two boys were part of the same criminal enterprise in that the acts were very similar in nature and appeared to be part of a greater plan to intentionally victimize the children. *Dalton,* 587 S.W.2d at 645. "[T]he court used the fact of adult authority as the key to its finding the defendant's sexual offenses were part of a scheme." *Brooks,* 810 S.W.2d at 634. In the present matter, Appellant's acts toward each of the two girls were not the same. Appellant was not the children's custodian, nor was he specifically charged with the responsibility of their care as was the defendant in *Dalton.* There was no evidence that Appellant set out to commit a series of sexual assaults on the two young girls that were but temporarily in his home. "There is no evidence mentioned or discussed ... which tended to show the defendant had some overarching plan and the separate acts of sexual misconduct were part of that plan." *Id.* at 633–34. If anything, the inference derived from the record is that Appellant was simply presented with the opportunity to sexually molest both girls and had no

---

**7.** The trial court did not specifically state which exception to the prohibition against prior misconduct evidence was applicable to the present matter. Further, in his brief, Appellant made only blanket assertions that "no valid reason existed to justify the admission of allegations of crimes against [J.G.]" However, as the State only argues that J.G.'s testimony was introduced as part of the "sequence of events" exception, we find that the State has tacitly conceded in this appeal that none of the other exceptions are applicable and we address only that exception in this opinion.

plan to do so beforehand. *Dalton* is not persuasive here.

Lastly, the cases which have allowed the application of the series or sequence of events exception have typically involved interrelated clusters of events, crime sprees, or situations where other exceptions were also applicable, such as deliberation, motive, identity, or intent.[8] Our review of the case law reveals the "series or sequence of events" exception to be a narrowly read exception and historically used in robbery and homicide cases.

As for the application of the series or sequence of events exception to the present matter, it appears that there was no evidence that Appellant had a generalized plan to inappropriately touch both N.T. and J.G. Additionally, it was not necessary to show Appellant's actions towards

---

**8.** *See Skillicorn,* 944 S.W.2d at 887 (holding that evidence of the defendant's misconduct in threatening other victims with the same guns he had used in a murder several hours earlier was admissible as "a continuation of the sequence of events that present[ed] a coherent picture of [defendant's] crime" and "helped establish the element of deliberation in the charged crime of murder"); *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994) (holding that where "the evidence of [the defendant's] planned use of the gun to commit a drive-by shooting was interconnected to and nearly contemporaneous with" the murder for which he was on trial, "it set the context for that offense" and "added to the complete and coherent picture of the murder and was, therefore, properly admitted"); *State v. McKibben,* 998 S.W.2d 55, 59 (Mo.App.1999) (holding that where the defendant was charged with robbery and there was evidence of two assaults committed by the defendant "in an uninterrupted sequence spanning approximately one hour" the two assaults were a "continuation of the sequence of events" surrounding the robbery and the defendant's "actions after the robbery were admissible to present a complete and coherent picture of the events that transpired"); *State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc 1998) (holding that evidence of other uncharged crimes was admissible where the crimes were "part of a three day drug binge and crime spree," and were necessary to "fully and fairly [present] a complete and coherent picture of the crimes charged and the whole truth to the jury"); *State v. Flenoid,* 838 S.W.2d 462, 467–68 (Mo.App.1992) (holding that where the defendant was charged with possession of a controlled substance and unlawful use of a weapon the evidence that defendant carried a beeper and cash was "part of the *res gestae* of the charge being tried," thus, it was "admissible to present a complete and coherent picture of events surrounding the possession of the cocaine and weapon" and was also indicative that the defendant sold drugs, which "was a circumstance tending to show his knowledge and intent in possessing the cocaine"); *State v. Davis,* 806 S.W.2d 441, 443 (Mo.App.1991) (holding that testimony by police officers that defendant, who was charged with possession of a controlled substance, had engaged in other drug transactions while they were performing surveillance on him was admissible because "such testimony established the *res gestae* of the crime with which defendant was charged;" such "[e]vidence of the transactions which occurred between defendant and others furnished a cohesive picture of the charged offense;" and, "[d]efendant's conduct prior to his arrest could also be viewed as circumstantial evidence to show how he came into possession of the cocaine"); *State v. Wacaser,* 794 S.W.2d 190, 194 (Mo. banc 1990) (holding that where the defendant was on trial for the murder of one boy and the evidence showed that the defendant took two boys "together to a motel room and contemporaneously stabbed [them] to death" the testimony that the State dismissed a second murder charge against defendant for the death of the second boy was admissible to illustrate "the circumstances surrounding the offense charged ..."); *Phillips,* 134 S.W.3d at 57 (holding that evidence that the defendant and an accomplice, who were on trial for murdering a store clerk, had a "plan" to burglarize a convenience store, steal anhydrous ammonia, and manufacture methamphetamine was admissible to show "the complete and coherent picture of the events that transpired" and to show motive, "in that the need for money obtained from the burglary was necessary for Defendant and the other two men to complete their plan of manufacturing methamphetamine").

J.G. in order to prove N.T.'s allegations and convict Appellant of statutory sodomy. N.T., herself, was able to testify about the event for which Appellant was on trial. "Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated." *State v. Sprinkle,* 122 S.W.3d 652, 666 (Mo.App.2003).

 "Evidence of other crimes is highly prejudicial and should be received only when there is strict necessity." *State v. Williams,* 804 S.W.2d 408, 410 (Mo.App. 1991) (internal quotation omitted). "If evidence of a prior crime is not admissible under any exceptions to the general rule prohibiting its admission, the admission is presumed to be prejudicial." *Brooks,* 810 S.W.2d at 634. In the instant matter, the evidence of Appellant's uncharged prior misconduct is not legally relevant, in that its prejudicial effect outweighs its probative value. *See Bernard,* 849 S.W.2d at 17; *State v. Sladek,* 835 S.W.2d 308, 314–15 (Mo. banc 1992). The trial court abused its discretion in permitting J.G. to testify as she did.

The judgment of the trial court is reversed and the cause remanded for a new trial.

PARRISH, P.J., and SHRUM, J., concur.