STATE of Missouri, Respondent,

v.

Gordon Delwyn BREDE, Appellant.

No. 27182.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 21, 2006.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Gordon Delwyn Brede ("Appellant") appeals his convictions for the Class B felony of assault in the first degree, a violation of

section 565.050; the unclassified felony of armed criminal action, a violation of section 571.015; and the Class D felony of unlawful use of a weapon, a violation of section 571.030.[1] Following a jury trial, the trial court sentenced Appellant to concurrent terms of imprisonment of eight years for assault; four years for armed criminal action; and one year for unlawful use of a weapon. As explained more fully below, Appellant maintains in his sole point relied on that the trial court abused its discretion in overruling his objection to evidence of "methamphetamine related activity" on the part of Appellant through videotaped statements made to a law enforcement official. We affirm the judgment of the trial court.

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Smith,* 185 S.W.3d 747, 751 (Mo.App. 2006), the record reveals that in the early morning hours of June 6, 2004, Polk County Sheriff's Deputy Jerry Ledford ("Deputy Ledford") investigated a report of a shooting at the residence of Lloyd Colvard ("Colvard"). When he arrived at the Colvard residence, Deputy Ledford saw Jerrod Taylor ("Taylor"), Rhonda Inman ("Inman"), and Colvard outside of the home. Behind the house, Deputy Ledford found the victim, Greg Lennox ("Lennox"), lying on the sidewalk covered with a blanket. Lennox had been shot in the shin, the thigh, and the scrotum. Deputy Ledford contacted emergency medical personnel to care for Lennox.

Inside the residence, Deputy Ledford discovered a broken glass-topped coffee table with blood on it; a spilled drinking glass; a chair which had been knocked over; and a broken pane of glass. He also discovered two spent .22 caliber shell casings on the floor in the house near the broken table and an additional spent shell casing was found on the sidewalk underneath Lennox.

After interviewing several people at Colvard's home, Deputy Ledford went to St. John's Hospital to interview Lennox. At the hospital, Lennox reluctantly told Deputy Ledford that the person who shot him was named "Gordon;" that his "last name started with the letter B;" that the man drove "a small white truck with a camper shell sized cap on the bed;" and that the man "lived on H Highway towards Halfway[,] Missouri." Lennox informed Deputy Ledford that "he was scared of [Appellant]" and he was reluctant to give the authorities information about the shooting.

Lennox was also interviewed at the hospital on that same day by Detective Mike Sallee ("Detective Sallee"). When Detective Sallee asked Lennox who shot him, Lennox identified Appellant by name.[2] Lennox told Detective Sallee that sometime after midnight the previous evening "he had gone upstairs to get something to drink" at Colvard's house and when he came back downstairs he saw Inman open the sliding glass door for Appellant. Lennox told Detective Sallee that Appellant entered the room; "started yelling at [Inman];" "pull[ed] a semiautomatic handgun ... from his waistband ...;" "point[ed] [the gun] at [Inman's] stomach;" and said "I'm going to kill you bitch." Lennox then told Detective Sallee that Appellant

was standing just a few feet away from him [when this happened]. [Lennox] said that he was backed up against the glass coffee table in that room down-

1. All statutory references are to RSMo 2000.

2. Lennox testified at trial that he did not tell either Deputy Ledford or Detective Sallee that

Appellant shot him; instead he testified that it was Colvard, not Appellant, who assaulted him.

stairs. [Lennox] said that [Appellant] had the gun and fired a shot striking him in the leg ... that [Lennox] fell backwards onto the glass coffee table in a sitting position. And he believe[d] that he broke the glass coffee table. And [Lennox] said that almost immediately there was a second shot fired.

Deputy Kay Williams ("Deputy Williams") arrested Appellant at his home later that day. Deputy Williams advised Appellant of his *Miranda*[3] rights, which he waived, and Appellant agreed to discuss the case with Deputy Williams. When Deputy Williams asked Appellant if he knew where the gun used in the shooting was located, Appellant replied that "he could show [Deputy Williams] where it was, but he couldn't exactly tell [him] where it was." Appellant told Deputy Williams that he had "thrown both [the gun and the magazine] out the window [of his vehicle] on his way home that morning." When Deputy Williams took Appellant to the area indicated, Deputy Williams discovered the gun and the magazine in a ditch about 250 yards from the highway.

After Deputy Williams took Appellant to the jail, he was interviewed by Sheriff Mike Parson ("Sheriff Parson") later that day. This interview was videotaped and admitted into evidence at trial as "Exhibit # 3."

Appellant did not testify at trial.

At the close of the evidence, the jury convicted Appellant of assault in the first degree, armed criminal action, and unlawful use of a weapon. Thereafter, he was sentenced to concurrent terms in the Missouri Department of Corrections. This appeal followed.

In his sole point on appeal, Appellant maintains the trial court abused its discretion in overruling his objection to "evidence of methamphetamine related ac-tivity on the part of [A]ppellant through his videotaped statement to Sheriff Parson ..." found in "Exhibit # 3." Specifically, Appellant maintains he "was not charged in this case with any drug offenses, and any probative value the drug evidence may have had on the question of motive was outweighed by the prejudicial impact of the evidence of uncharged crimes." He asserts "[i]t would have been a relatively simple matter to redact the tape" to omit the references to drug activity.

Trial courts have broad discretion in determining whether to admit or exclude evidence, and an appellate court will re-verse only upon a showing of a clear abuse of discretion. *State v. Zink*, 181 S.W.3d 66, 72 (Mo. banc 2005). " 'An abuse of discretion occurs when a trial court's rul-ing is clearly against the logic of the cir-cumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.' " *In re Spencer*, 123 S.W.3d 166, 168 (Mo. banc 2003) (quoting *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. banc 2003)). "We review trial court decisions regarding the admissibility of evidence 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.' " *State v. Dunn*, 21 S.W.3d 77, 85 (Mo.App.2000) (quoting *State v. Santillan*, 1 S.W.3d 572, 579 (Mo.App.1999)); *see State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996).

" 'The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is not admissi-ble for the purpose of showing the propen-sity of the defendant to commit such crimes.' " *State v. Johnson*, 161 S.W.3d 920, 924 (Mo.App.2005) (quoting *State v.*

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998)). " 'Propensity to commit a crime is not a proper purpose for admission of evidence because it may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged.' " *State v. Pennington,* 24 S.W.3d 185, 189 (Mo.App.2000) (quoting *State v. Bernard,* 849 S.W.2d 10, 16 (Mo. banc 1993)). However, "such evidence may be admitted if it tends to establish motive, intent, the absence of mistake or accident, or a common plan or scheme." *State v. Phillips,* 134 S.W.3d 54, 57 (Mo. App.2004). " 'An additional exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged.' " *State v. Mitchell,* 975 S.W.2d 191, 197 (Mo.App.1998) (quoting *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994)).

■ To be admissible, evidence of prior bad acts must be "both logically and legally relevant." *State v. Roberts,* 948 S.W.2d 577, 591 (Mo. banc 1997). "Evidence is legally relevant if its probative value outweighs its prejudicial effect ... [and] evidence is logically relevant if it has a legitimate tendency to directly establish the accused's guilt." *State v. Nelson,* 178 S.W.3d 638, 642–43 (Mo.App.2005). "The trial court, in its discretion, determines the admissibility of other crimes evidence by evaluating whether the prejudicial effect of the evidence outweighs its probative value." *State v. Campbell,* 147 S.W.3d 195, 206 (Mo.App.2004).

In the present matter, "Exhibit # 3," the videotape of Sheriff Parson's interview with Appellant, was played in its entirety for the jury. In the videotaped interview, which was originally conducted on the afternoon following the shooting, Appellant stated that he initially went to Colvard's home on the evening in question because he knew Lennox was over there and he believed Lennox had stolen a "couple of [antique] fans" from him. In the videotape, Appellant admitted he had been drinking heavily that evening and that he took a gun with him to Colvard's house to "intimidate [Lennox and the others]." Appellant acknowledged that he was also "upset" with Lennox and his girlfriend, Inman, because Inman had falsely accused Appellant of leaving "trash from a meth[amphetamine] cook" on their property. Appellant stated that Inman was "lying" about Appellant making methamphetamine and that he "[did not] have any meth[amphetamine] trash." He stated that when he entered Colvard's house on the night in question he did so with the intention of confronting Lennox about the stolen fans, but that before he could do so, Inman "jumped [his] ass" about the "trash from [the] cook" and "that's what started it. . . ." He went on to state that the shooting was an accident and that he "didn't mean to shoot [Lennox]." Furthermore he related that he knew Colvard had "plenty of problems with drug activity . . ." and that Colvard was facing a federal indictment on drug and weapons charges.

Defense counsel objected to the aforementioned portions of the videotape on the basis that the State was "trying to have it shown or prove other misconduct and other crimes that [Appellant] was involved [in] or insinuating involvement in drug activity" and that such evidence "doesn't have anything to do with this particular case." Defense counsel argued that such evidence "would be highly prejudicial to the jury . . ." and was "not proper to come before this jury. . . ." Defense counsel then asked for a mistrial.

The State countered with its argument that in his taped statements Appellant "actually admits that he was upset at these people for accusing him of leaving trash associated with the burn of methamphet-

amine in their yard. And he went to the house to have words with them about that ... that [was] the motive for the assault." The trial court overruled defense counsel's objection.

Based on the foregoing, it is clear that Appellant's videotaped admissions are probative of a possible motive for shooting Lennox and probative of Appellant's intent to carry out the assault. Furthermore, Appellant's videotaped statements are probative of a showing of an absence of mistake or accident on the part of Appellant when he shot Lennox. *Phillips,* 134 S.W.3d at 57. The evidence elicited on the videotape relating to "methamphetamine related activity" was "logically and legally relevant." *Roberts,* 948 S.W.2d at 591. The trial court did not abuse its discretion in overruling Appellant's objection to the introduction of his videotape statements relating to methamphetamine related activity on the part of Appellant. Point denied.

The judgment of the trial court is affirmed.

GARRISON, J., and BATES, C.J., concur.